### MANEE et al. v. UNITED STATES.

United States District Court
S. D. New York.
April 12, 1951.

994

David Rubin, Brooklyn, N. Y., for plaintiffs.

Irving H. Saypol, U. S. Atty., New York City, By John M. Cunneen, Asst. U. S. Atty., William B. McKeown, New York City, for defendant.

GODDARD, District Judge.

This is an action by the executors of the Estate of E. Stewart Manee for recovery of interest on an alleged "overpayment" of estate tax.

Before his death, Manee was himself the executor of the estate of one Jane E. Britton. While he was so acting, one of the beneficiaries under the will of Jane E. Britton instituted a proceeding in the Surrogate's Court, New York County, for a compulsory accounting by Manee as Executor. On June 27, 1940, a decree was signed by the Surrogate surcharging Manee in an amount not completely fixed.

On July 9, 1940, a notice of appeal from this decree was filed on behalf of Manee. This appeal was still pending when Manee died on June 21, 1943.

On September 20, 1944, the last day upon which a tax return could be filed for his estate, and while the appeal was still pending, the plaintiffs in this action, as executors of the Estate of E. Stewart Manee, filed the estate tax return. This return reported no net estate [after deducting from the assets of the estate the amounts definitely surcharged against Manee and also an estimated amount for the surcharges that were not definitely fixed in the Surrogate's decree] and no estate tax payable. By affidavits, the plaintiffs swore that the statements made in the return were true and correct.

With this return, the plaintiff W. Britton Manee submitted a letter and a cheque of the Estate of E. Stewart Manee in the amount of $64,000. In this letter, after reporting that an appeal from the Surrogate's decree was pending, the plaintiff Manee stated:

"The enclosed return has been prepared to include the surcharges against the decedent set forth in said Decree with figures for those surcharges which are determined and with approximate or estimated figures or no figures for those surcharges which are not yet fixed and determined. The result, therefore, appears to indicate that no tax will be due. However, in the event that the Estate of the decedent is successful on the appeal from said Decree, many of the deductions will thereby be eliminated and, in all probability, a tax would be due. The tax which would be due in the latter event is estimated to be about $64,000.00.

"September 21st, 1944 is the last day to file the Return and to pay the tax, if any, and therefore in order to avoid a penalty for failure to file the Return and/or pay the tax, if any, on time, the Return is filed in its present form and the enclosed check sent to you although, in the opinion of the undersigned, the fact whether or not a tax will be ultimately fixed or the amount of same cannot be determined at the present time * * *".

Although the appeal from the Surrogate's decree was taken on June 29, 1940, it was never perfected, but some six years later, a compromise agreement was executed by the parties in October, 1947 and approved by the Surrogate May 12, 1948.

On March 5, 1947, an Internal Revenue Agent tentatively fixed the estate tax at the sum of $15,990.75, subject to a credit for state inheritance taxes actually paid in the amount of $345.45. The Commissioner of Internal Revenue made an assessment of deficiency in estate taxes in the amount of $15,645.30 on April 18, 1947. On September 18, 1947, the plaintiff filed a claim for refund in the amount of $48,354.70 [$64,000 minus $15,645.30] with interest from September 20, 1944, the date the return was filed. [This claim was formally rejected by the Commissioner on February 18, 1948.] On November 20, 1947, the Commissioner received from the plaintiffs the required proof of the payment of the state inheritance tax. On December 11, 1947, the Commissioner notified plaintiffs that a refund in the amount of $48,354.70 would be allowed but that the claim for interest thereon was disallowed.

A Treasury cheque in that amount, issued and dated December 24, 1947, was sent to the Collector of Internal Revenue. On December 31, 1947, the Collector notified the plaintiffs that he was holding the cheque for them and, upon receipt from plaintiffs of a statement that there were no outstanding federal taxes against the estate, the cheque would be delivered to them. Such statement was furnished by plaintiffs on April 23rd, 1948 and the cheque delivered to them, but without interest. On June 11, 1948 plaintiffs commenced this suit, basing their claim for interest on Section 3771 of Title 26, U.S.Code, which provides in part—"(a) Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the rate of 6 per centum per annum."

The defendant contends that there was no "overpayment" within the meaning of Section 3771 in this case; that when the plaintiff Manee sent the cheque for $64,000 to the Collector with the estate tax return, he was merely making a deposit in order to avoid paying interest in the event of any possible future assessment against the estate.

The plaintiffs contend that this was an "overpayment" within the meaning of Section 3771 as modified by Section 3770(c) of Title 26, U.S.Code. Section 3770(c) provides—"An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid."

However, this section is declaratory of the law in existence at the time that this section was added to the Internal Revenue Code and was merely intended to correct the erroneous inference drawn from certain decisions to the effect that under no circumstances could there be an "overpayment" in excess of actual tax liability. Murphy v. United States, D.C., 78 F.Supp. 236; See Conference Report, U.S.Code Congressional Service, 78th Congress, 1st Session, p. 2.62.

The law in existence at the time that Section 3770(c) became law was laid down by the Supreme Court in Rosenman v. United States, 1945, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535. In that case, the court held that a cheque given to the Collector of Internal Revenue by the executors of an estate was not a "payment" of tax because "* * *, the taxpayer did not discharge what he deemed a liability nor pay one that was asserted. There was merely an interim arrangement to cover whatever contingencies the future might define. * * * They were, as it were, payments in special suspense accounts established for depositing money received when no

996

assessment is then outstanding against the taxpayer. The receipt by the Government of moneys under such an arrangement carries no more significance than would the giving of a surety bond."

█ In the case at bar, the Collector deposited the $64,000 in a suspense account. The plaintiffs did not discharge what they deemed a liability. As shown in their sworn return, they reported no tax due. The transmittal of the cheque for $64,000 was not a payment of an estimated tax but it was a deposit [upon which no interest is payable] of the maximum amount that might be due if the estate were completely successful in its appeal. It was for the purpose of "covering whatever contingencies the future might define".

█ It is only when the amount remitted is paid as a tax, that there is an "overpayment" upon which the taxpayer will be entitled to interest. Where no tax has been assessed and it is not remitted in payment of a tax but merely as a deposit against possible contingencies, it is not an "overpayment" of tax. Although the deposit may save the taxpayer's having to pay interest in the event of any future assessment, the Government is not liable for 6 per cent interest upon the difference between the amount of the deposit and the tax ultimately found to be due.

█ The plaintiffs further contend that, even if this were a deposit on the date given, it became a payment after the Internal Revenue agents completed an audit of the estate and tentatively fixed a tax in the amount of $15,645.30. However, neither this informal fixing of the tax nor the determination of deficiency made in April, 1947 changed the character of the deposit. It was still a voluntary deposit to cover any assessment that might be made against the estate. The Commissioner made the refund within a reasonable time after he received the proof that the state inheritance taxes had actually been paid.

Judgment for defendant dismissing the complaint.

Proposed findings of fact and conclusions of law in accordance with the above to be submitted by defendant.