### HERRICK et al. v. UNITED STATES.

#### Civ. A. No. 12547.

United States District Court
E. D. New York.

Oct. 21, 1952.

Affeld, Sowers & Herrick, New York City, for plaintiffs. James H. Black, Harold E. Herrick, New York City, of counsel.

Charles S. Lyon, Acting Asst. Atty. Gen., Andrew D. Sharpe, Elizabeth B. Davis, Sp. Assts. to the Atty. Gen., Frank J. Parker, U. S. Atty., Brooklyn, Nathan Borock, A'sst. U. S. Atty., Brooklyn, for the United States.

GALSTON, District Judge.

This is a motion by the plaintiffs, as executors of the estate of Ethelbert Ide Low, for a summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. At the hearing on the motion, leave was granted to the defendant to move orally for summary judgment in their favor. The plaintiffs have filed affidavits in support of its motion. The defendant has not filed any opposing affidavits and makes no contention that the facts as set forth in support of the plaintiffs' motion are not true.

The facts relevant to the motions are essentially as follows:

Ethelbert Ide Low died on October 19, 1946. He was then a resident of Nassau County, New York. The plaintiffs, as executors, duly filed an estate tax return and made payment of a tax in the sum of $331,044.19. Subsequently, the executors deposited $40,000 with the Collector of Internal Revenue for the First District of New York, to be applied to the extent required in payment of such additional estate tax as might be shown to be due and payable, and the balance to be refunded. Thereafter, the Commissioner of Internal Revenue, upon audit of the estate tax return, determined the tax to be $341,726.44. The complaint alleges that the larger sum was determined

"by including as taxable property the said joint and survivor annuity * * and taxing the same at $10,782.25; such determination resulted in a deficiency assessment of $10,782.25 * * which said deficiency of $10,782.25 was deducted from the amount deposited with the Collector, * * * and a refund of $29,317.75 was made to the plaintiffs as such Executors by the said Collector."

This allegation is admitted by the defendant's answer.

The joint and survivor annuity referred to in the complaint had been included in the insurance schedule of the tax return as a non-taxable item, as follows:

"Retirement Pension: Decedent for many years was an officer of the Home Life Insurance Company, 256 Broadway, New York, New York. Under the provisions of the 'Retirement Plan for Salaried Employees of Home Life Insurance Company', which has been approved by the Superintendent of Insurance of the State of New York and

which has been held to be fully qualified under Section 165, I. R. C., by the Commissioner of Internal Revenue, he was entitled to receive upon reaching his Normal Retirement Date (age 65) either a pension for life, or alternatively, a smaller pension while he and his wife both lived with two-thirds of such reduced pension payable to the survivor for life. The decedent chose the latter alternative on April 30, 1945, his Normal Retirement Date under the Retirement Plan, which choice was thereafter irrevocable. However, due to the world war, he did not retire and continued to work until his death on October 19, 1946. Under this alternative pension his widow, Gertrude H. Low, born May 13, 1882, is entitled to receive a monthly income of $541.84 for the rest of her life."

Subsequent to the application of the fund deposited with the Collector to the payment of the assessed deficiency, a claim for refund of the tax attributable to the annuity was filed, but the Commissioner disallowed it.

This action was then instituted in the district court, pursuant to 28 U.S.C.A. § 1346, providing that jurisdiction lies where the amount claimed is in excess of $10,000 and the Collector, to whom the payment was made is not in office, to recover the sum of $10,782.25 together with interest thereon.

The pension and retirement plan in question was adopted by the decedent's employer in 1940. Costs of benefits applicable to past services were to be paid for entirely by the employer; while costs of benefits applicable to service after membership in the plan were to be shared jointly by employee and employer, the greater part of the cost to be assumed by the employer.

The decedent's election to receive a joint and survivor retirement annuity was made under paragraph XII of the plan, which provides, in material part, as follows:

"A member in active service at his normal retirement date may, at that time, elect to receive, instead of the regular Service Retirement Annuity, a Joint and Survivor Retirement Annuity of a reduced amount for himself and his wife, commencing at his retirement on or after that date. Such reduced amount shall be payable to them jointly while both are living and two-thirds (⅔'s) of such reduced amount will be payable thereafter to the survivor while living.

"If the member, upon request of the Board of Directors, continues in active service after the normal retirement date, such Joint and Survivor Retirement Annuity will not commence until he actually retires. * * *."

The Government claims that the value of the joint and survivor annuity is includible as part of the decedent's gross estate under section 811(c)(1)(B) of the Internal Revenue Code, as amended by section 7 of the Technical Changes Act of 1949, 26 U.S.C.A. 811(c)(1)(B). This section provides that the gross estate of a decedent shall include the value at the time of his death of property to the extent of any interest therein of which he had made a transfer by trust or otherwise, "under which he has retained for his life * * * (i) the possession or enjoyment of, or the right to the income from, the property, * * *."

In support of its position, the Government cites such cases as Commissioner of Internal Revenue v. Clise, 9 Cir., 1941, 122 F.2d 998, certiorari denied 315 U.S. 821, 62 S.Ct. 914, 86 L.Ed. 1218; Commissioner of Internal Revenue v. Wilder's Estate, 5 Cir., 1941, 118 F.2d 281, certiorari denied 314 U.S. 634, 62 S.Ct. 67, 86 L.Ed. 509 and Mearkle's Estate v. Commissioner of Internal Revenue, 3 Cir., 1942, 129 F.2d 386. These cases involve situations in which the taxpayer made an outright purchase of an annuity contract providing for the payment of annuities to himself for life and at his death to a surviving annuitant for life. It is contended that the result of the election made by the decedent on April 30 was, in effect, a purchase by him of a joint and survivor annuity contract and a transfer under which the decedent retained enjoyment within the meaning of section 811(c), as construed in the Clise and other cases referred to above.

The plaintiffs, on the other hand, deny that the joint and survivor annuity here was purchased outright by the decedent as an independent insurance contract; contrariwise they contend it was an alternative benefit provided for in the general retirement plan for employees, available to the employee-members of the plan through the exercise of the right of election as an integral part of the plan. They assert that the annuity is non-taxable under section 811(c). In support they cite Higgs' Estate. v. Commissioner of Internal Revenue, 3 Cir., 1950, 184 F.2d 427, and Commissioner of Internal Revenue v. Twogood's Estate, 2 Cir., 1952, 194 F.2d 627, 629.

In his letter rejecting the executor's claim for refund, the Commissioner stated:

"The claim is based mainly on the decision of the United States Court of Appeals for the Third Circuit in estate of William J. Higgs v. Commissioner of Internal Revenue, and $10,682.25 of the refund claimed represents that portion of the tax paid due to the inclusion in the taxable estate of the value of a survivorship annuity payable to his wife on his death. However, the Bureau is not following the Higgs case and takes the position that this annuity was properly included in the taxable estate."

This letter of rejection is dated December 19, 1951. Subsequently, on February 25, 1952, the Court of Appeals of this Circuit decided the Twogood case, supra. There, as here, the decedent was, while living, a member of an employees' retirement plan which contained a right of election in the employee to request payment under the plan to a reduced annuity upon his retirement and to designate a dependent to whom annuity payments would be made after his death in a further reduced amount if that designated person survived him. During his life, the decedent there also made the election and the Bureau claimed the value of the annuity payable to the surviving widow was taxable under section 811(c). The court held that the annuity was not includible as part of the decedent's gross estate by virtue of section 811(c)(1)(B) as, "no life interest was retained by the dece-

dent in whatever his wife received by his election under the plan."

In attempting to bring the instant case within the ruling of the Clise and other cited cases, supra, the Government argues that the contributions of the decedent's employer were made for the purchase of a retirement annuity for the decedent alone. It is true, of course, that the employer's contributions were made "because of his services to his employer". The contributions, however, were made as payments, not to a plan of retirement annuity for the decedent alone, but to a retirement plan under which the employee could elect to receive annuities for himself alone for life, or to receive annuities in a reduced amount jointly with his wife for their joint lives and a further reduced amount to the survivor for life. That is to say the alternative plans were equally integral parts of the retirement plan.

The Government also argues that when the decedent made his election on April 30, 1945, "the amount he had contributed to the plan became a part of the purchase price of the joint and survivor annuity contract which he had elected to take. The remainder of the purchase price stemmed not from payments made by his employer, but on April 30, 1945, when the purchase of the joint and survivor annuity contract became effective, the payments of the employer became payments by the decedent." It seems that what is contended, in effect, is that on April 30, which would have been the normal retirement date of the decedent, all benefits to which the decedent was entitled under the plan became irrevocably vested in him; and that in making the election, he then had complete rights to all contributions made to the plan by the employer which he then took and applied to the "purchase" of a joint and survivor contract.

The Government fails to consider, however, the provision contained in Chapter XII of the retirement plan in question that the benefits of the plan "will not commence until he actually retires." In fact, the decedent was in active service when he died and had never actually retired. His right to annuity payments was only a contingent

right on April 30, which did not become finally vested until such time as he actually retired from the service of his employer. See Commissioner of Internal Revenue v. Twogood's Estate, supra, 194 F.2d at page 629.

The Government does not ignore the Twogood case, but contends that it is distinguishable and so not controlling. There, the option plan elected by the decedent provided for payment to him in a reduced amount for life, and annuity payments to his surviving wife in a further reduced amount for her life. If the wife had predeceased the husband, he would have been entitled to an annuity for his life, but only to the reduced annuity elected by him. In the case at bar, the joint and survivor plan elected by the decedent called for payment of a reduced amount jointly to the employee and his wife while living, with two-thirds of such reduced amount continued to the survivor for life. The Government argues that:

"* * * under the option had the wife died first he would only receive two-thirds of the reduced amount for the remainder of his life. Thus the payments decedent would receive or might have received had he survived his wife were definitely subject to a retained interest in what his wife would receive if she were the survivor."

There exists, therefore, according to the defendant a "causal relationship between the property transferred and the payments received by the transferor," the test applied by the court in the Twogood case in determining whether the annuity was taxable under 811(c).

The foregoing argument rests, at least in part, upon the necessity of survivorship. As noted in the Higgs case, supra, survivorship is not enough under 811(c), as amended by the Technical Changes Act of 1949, unless the decedent has retained a reversionary interest. The Government does not contend that there is a retention of a reversionary interest within the meaning of section 811(c).

As to whether there was a retained interest for life of the possession or enjoyment of the property transferred, the following language of the Twogood case seems controlling:

"All that the decedent had prior to his reaching his retirement date was a right to receive an annuity which was contingent upon his meeting the requirements for retirement. This right became vested, at the latest, * * * when he completely retired from the service of his employer * * *. While it is true that the payments he received were reduced in amount as a result of his electing to designate a dependent to receive further payments after his death, which designation was made irrevocable * * *, in no sense can it be said that the payments the decedent received were derived from any retained interest in what his then wife might receive by virtue of his election under the plan. The realities of the situation compel a contrary interpretation. Not only had he no such retained interest in the rights created in his wife, but in fact his right to payments under the plan were merely reduced by the act which created rights in his wife."

It must be concluded, therefore, that the value of the annuity is not taxable under section 811(c)(1)(B) of the Internal Revenue Code. If the plan here is distinguishable from that considered in the Twogood case, the distinction does not appear such as to require a different result.

The defendant also contends that even if the plaintiffs are entitled to refund of the tax assessed and paid upon the joint and survivor annuity, they are not entitled to any interest thereon.

Section 3771 of the Internal Revenue Code, 26 U.S.C.A. § 3771, provides:

"Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the rate of 6 per centum per annum."

The defendant's position is that the deposit of a sum with the Collector of In-

ternal Revenue is not an "overpayment" within the meaning of section 3771. Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535, and Murphy v. United States, D.C., 78 F.Supp. 236, support this proposition. The difficulty with the defendant's argument, however, is that it does not squarely meet the issue presented. In the Murphy case, 78 F.Supp. 236, as well as Mitchell v. Westover, D.C., 90 F.Supp. 278, and Manee v. United States, D.C., 97 F.Supp. 993, cited by the defendant, the taxpayer claimed the right to interest on that portion of the deposit which was refunded by the Collector after he had deducted the amount of the assessed deficiency. Here, however, what is involved is the question of interest upon that portion of the deposit which was actually applied by the Collector in payment of a deficiency assessed by the Commissioner.

In Rosenman v. United States, supra, in considering the timeliness of an action to test the legality of an assessed deficiency in taxes, the Supreme Court rules, as noted, that the deposit of a sum with the Collector was not the "payment" of a tax. The Court also ruled, however, that there was a "payment" within the statutory meaning when the Collector applied the amount deposited by the taxpayer, in satisfaction of a deficiency in the estate tax. Consequently, when the Collector in the case at bar applied a part of the fund deposited in payment of the assessed deficiency, there was payment of a tax; and the conclusion here being that it constitutes an overpayment, the plaintiffs are entitled to interest thereon in accordance with section 3771.

The complaint alleges that the assessed deficiency due to the inclusion of the joint and survivor annuity as a taxable item is in the amount of $10,782.25, and prays judgment for such amount. The defendant's answer, although denying the plaintiffs' right to recover, admits the allegations in respect to the amount stated. On the other hand, the claim for refund, which was filed by the executors, lists the amount of the assessment as $10,682.25 (Ex. A, attached to the complaint). The Commissioner's letter rejecting the claim also indicates the amount to be $10,682.25

(Ex. B of the complaint). The complaint also alleges the payment of a tax of $331,044.19, and the subsequent determination by the Commissioner that the tax due amounts to $341,726.44. The difference between the two sums comes to $10,682.25. Similarly, the difference between the deposit of $40,000 and the alleged refund of $29,317.75 is $10,682.25. There is no explanation given by either party of this discrepancy between the $10,782.25, alleged to be the assessed deficiency constituting the claimed overpayment, and apparently admitted by the defendant, and the $10,682.25, shown by other allegations in the pleadings as well as by documents made a part of the moving papers, to be the true amount. Plaintiff's motion for summary judgment is granted, but conditioned upon a proper explanation of this discrepancy of $100. Defendant's motion for summary judgment is denied. Settle order.