**DUBUQUE PACKING COMPANY, a corporation, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

Civ. No. 592.

United States District Court,
N. D. Iowa, E. D.

Dec. 27, 1954.

plaint, filed herein on June 23, 1952, set forth four causes of action. In the First cause of action recovery was sought for the sum of $3,861.78 from income taxes paid. In the Second cause of action recovery was sought for $4,280.14 for excess profits taxes paid. In the Third cause of action recovery was sought for $5,878.54 for income taxes paid. It was later stipulated by the parties that the amount involved in the Third cause of action was the sum of $3,801.58. In the Fourth cause of action recovery was sought for $28,748.26 for excess profits taxes paid. On May 21, 1954, before the case was reached for trial, the defendant issued refund checks to the taxpayer in the amounts of $29,112.25 and $5,997.80. The effect of these payments was to satisfy the taxpayer's Second cause of action in full and to reduce the principal amount in controversy in the Fourth cause of action to the sum of $6,847.43. Later, with leave of Court, the defendant amended its answer. In its amended answer the defendant stated that due to a mistake in computation one of the refund payments was in excess of the amount to which the taxpayer was entitled. The defendant alleged that the refund check which was in the amount of $29,112.25 should have been in the sum of $27,818.61. The defendant asked recovery against the plaintiff for the alleged excess.

The taxpayer is an Iowa corporation with its principal place of business at Dubuque, Iowa. The taxpayer is engaged primarily in the processing and packing of meat products. It kept its books and filed its tax returns on the accrual basis and on the basis of a fiscal year beginning November 1st and ending on October 31st. For convenience in reference, the calendar year in which the taxpayer's fiscal year ends will be referred to as the tax year and the Collector of Internal Revenue at Des Moines, Iowa, will be referred to as the Collector.

The taxpayer filed its tax return for the year 1941 and paid the taxes thereon shown to be due. Sometime prior to November 27th, 1943, the taxpayer's re-

Benjamin Arac, Boston, Mass., Matthew H. Czizek, Dubuque, Iowa, for plaintiff.

Girard R. Jetton, Jr., Sp. Asst. to Atty. Gen. of the United States, F. E. Van Alstine, U. S. Atty., Richard W. Beebe, Asst. U. S. Atty., Sioux City, Iowa, for defendant.

GRAVEN, District Judge.

This is an action by the plaintiff taxpayer under Section 1346(a) (1) of 28 U.S.C.A. to recover income and excess profits taxes alleged to have been wrongfully collected under the internal revenue laws of the United States. The com-

turn for that year was audited by the Internal Revenue Department. On the basis of the audit the examining revenue agent asserted a deficiency of $2,927.11 in the income tax for that year. On November 27, 1943, the taxpayer transferred $2,927.11 (plus accrued interest of $328.71) to the Collector. Sometime prior to June 18, 1946, another audit of the taxpayer's return for 1941 was made by the Internal Revenue Department. The examining revenue agent asserted a deficiency of $6,936.79 in the excess profits tax for that year. On June 18th, 1946, the taxpayer transferred $6,936.79 (plus accrued interest of $1,841.67) to the Collector.

The taxpayer filed its tax return for the year 1942 and paid the taxes thereon shown to be due. Sometime prior to April 26, 1945, the taxpayer's return for that year was audited by the Internal Revenue Department. Based on that audit, the examining revenue agent asserted a deficiency ($51,056.12 plus accrued interest of $8,219.82) totalling $59,275.94. In response thereto the taxpayer transferred the following sums to the Collector:

May        12, 1945............ $34,207.60
June         2, 1945............ $    476.80
June        26, 1946............ $  1,446.97
September 11, 1946............ $    819.04

These amounts plus a current credit of $2,690.71 and a credit of $19,634.82 allowed on September 10th, 1946, totalled $59,275.94.

The transfers of money made by the taxpayer to the Collector were placed in an account referred to as "Unclassified Collection Account" or "Suspense Account." In the Collector's notice of remittance relating to the transfer of $2,927.11, it is stated that it was "Held in Suspense Account 9-D."

On August 23, 1946, the Commissioner of Internal Revenue signed the assessment certificates assessing the asserted deficiencies and thereupon the Suspense Account was debited by the amount of the assessments. On May 28, 1948, the taxpayer filed its separate claims for refund of the amounts involved. On June 27, 1950, the Commissioner notified the taxpayer its claims for refunds of income taxes for the years 1941 and 1942 had been denied. On July 13, 1950, the Commissioner notified the taxpayer that its claims for refunds of excess profits taxes for the years 1941 and 1942 had been denied. As heretofore noted, this action was commenced by the taxpayer on June 23, 1952, and at the time the case was submitted there were three causes of action remaining for consideration. The parties are in controversy, among other matters, as to whether the taxpayer's claims for refund connected with transfers of money are barred by the statute of limitations. The claims connected with the transfers of money involve all the amount claimed by the taxpayer in its Fourth cause of action and a substantial part, but not all, of the amount claimed by the taxpayer in its First cause of action.

Section 322(b) (1) of 26 U.S.C.A. provides as follows:

"Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years *from the time the tax was paid*, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. If no return is filed by the taxpayer, then no credit or refund shall be allowed or made after two years from the time the tax was paid, unless before the expiration of such period a claim therefor is filed by the taxpayer." (Emphasis supplied.)

The claims of the taxpayer for the refunds immediately under consideration were not made within two years from the time of the transfers of money but were made within two years from the time of formal assessment. The contentions of the parties as to this phase of the case revolve around the words in the statute "from the time the tax was paid." It is the claim of the defendant that the

taxes in question were paid when the taxpayer made the transfers of money in response to the assertions of the deficiencies. It is the claim of the taxpayer that the taxes in question were not paid until their formal assessment.

The purpose of a statute of limitations is to compel the exercise of rights within a reasonable time after they accrue. A limitation is regarded as unreasonable that does not afford full opportunity to sue before the bar takes effect. Lamb v. Powder River Live Stock Co., 8 Cir., 1904, 132 F. 434; 34 Am.Jur. 31. This concept of fair opportunity to sue is incorporated into Section 322(b) (1) through the medium of the tax return. A tax return which does not disclose the requisite information necessary for the taxing authorities to determine tax liability does not start the statute of limitation running because the taxing authorities have not had a fair opportunity to determine whether a claim against the taxpayer exists. Commissioner v. Lane-Wells Co., 1944, 321 U.S. 219, 64 S.Ct. 511, 88 L.Ed. 684; John D. Alkire Inv. Co. v. Nicholas, 10 Cir., 1940, 114 F.2d 607. See also annotations 131 A.L.R. 822, 3 A.L.R.2d 647. Likewise even in the face of a retroactive tax act requiring an additional return, the old return will commence the statute of limitations where it gave all the information necessary for the computation of the new tax. Zellerbach Paper Co. v. Helvering, 1934, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264. See Germantown Trust Co. v. Commissioner, 1940, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770. Cf. Danz v. Commissioner, 1952, 18 T.C. 454, 465.

Section 322(b) (1) provides that not only will the filing of a return start the statute of limitations running but also payment of the tax. A taxpayer may transfer money to the tax collecting authorities for a number of reasons other than the satisfaction of a clearly defined tax liability. The transfer may be made to release an existing tax lien on real property. Mitchell v. Westover, D.C. Cal.1950, 90 F.Supp. 278. It may be made to avoid possible penalty or interest assessments. Reading Co. v. United States, 1951, 98 F.Supp. 598, 120 Ct.Cl. 223; Manee v. United States, D.C.N.Y. 1951, 97 F.Supp. 993. It may be made in anticipation of a deficiency assessment. Herrick v. United States, D.C. N.Y.1952, 108 F.Supp. 20; Murphy v. United States, D.C.Cal.1948, 78 F.Supp. 236. It may be made as payment of an estimated tax. Hanley v. United States, 1945, 63 F.Supp. 73, 105 Ct.Cl. 638. From a subjective standpoint the transfer may be considered as a tax payment by the parties, Hanley v. United States, supra, or they may merely consider it a deposit rather than payment of a tax. United States v. Los Angeles Soap Co., 9 Cir., 1946, 153 F.2d 320; Superior Valve & Fittings Co. v. Commissioner, 1952, 18 T.C. 931, 939.

It is evident from the cases that not every transfer of money by a taxpayer to a Federal tax authority will constitute a "payment" under the laws relating to Internal Revenue. The question here presented is as to the status of a transfer of money to a Federal tax authority as a "payment" within the statute of limitation contained in Section 322(b) (1). As heretofore noted, a "return" or "payment" will start the statute running. To do so the return must define the tax obligation or give sufficient information to define the tax obligation. It would seem that in construing the provisions of Section 322(b) (1) in connection with a "payment" the same policy should be recognized and the same reasoning used as is recognized and used in construing the provisions of that Section in connection with a "return." In the case of a proper tax return the return itself defines the tax obligation. However, in the case of a money transfer the transfer itself does not define the tax obligation. Hence some further act is necessary. A money transfer to a Federal tax authority (regardless of the original reason for the transfer) should start the statute of limitation running on the date that the tax obligation becomes defined. On this date the transfer becomes a "payment" because from this day for-

ward the taxpayer has a fair opportunity to determine whether he has a claim for refund. In Rosenman v. United States, 1945, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535, the Court held that the significant date for statute of limitation purposes was the date the tax obligation became defined. This is also the holding in the case of Thomas v. Mercantile Nat. Bank, 5 Cir., 1953, 204 F.2d 943. In that case the Court said, 204 F.2d at page 944:

"It would be illogical to hold * * * that the statute of limitation began to run against a claim for refund before the deficiency itself came into existence, and *before the fact that there was an overpayment, and if so the amount thereof, became ascertainable.*" (Emphasis supplied.)

See also Roles v. Earle, 9 Cir., 1952, 195 F.2d 346, certiorari denied, 1952, 344 U.S. 819, 73 S.Ct. 14, 97 L.Ed. 637.

In the Rosenman case, supra, 323 U.S. at page 663, 65 S.Ct. 536, the Court expresses the view that in cases of overpayment the problem of interest and the statute of limitation problem should be treated similarly. The defendant in the instant case urges that the standard to determine interest liability is one of bona fides;—Was the money transfer made incident to a belief that it was a bona fide discharge of an actual or reasonably apparent tax liability? It asserts that Section 3770(c) enacted by the Current Tax Payments Act of 1943, 57 Stat. 126, c. 120, § 4(d), § 1621 et seq., 26 U.S.C.A., was merely a statutory enactment of this standard and that under Section 3770(c) of that Act the taxpayer here would be entitled to interest. That Section provides:

"An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid."

The Current Tax Payments Act of 1943 was designed to collect taxes from wage earners and certain self-employed persons as the income was earned. This Act imposed a duty to make payments before the actual tax liability became defined. Therefore it is not surprising that in this situation Congress specifically provided that interest was to be allowed. It would seem that Section 3770(c) provides for a situation distinguishable from the instant case because it was enacted as part of an Act which imposed a statutory duty upon the taxpayer to make a money transfer to the Government before the tax liability became defined.

The legislative history of Section 3770(c) indicates that the Congress recognized that under the Current Tax Payments Act of 1943 it was imposing a duty upon the taxpayer to make a money transfer to the Government before the tax liability became defined and that under these circumstances interest should be allowed where the payment exceeds the ultimate tax liability. House Conference Report No. 510, 78th Congress, 1st Session, states:

"Under the bill as passed by the Senate, two *requirements* become basic features of the income tax: (1) The declaration and payment of the estimated tax; and (2) the withholding and collection by the employer of the tax from the wages of employees, and the return and payment as such of the amount by the employer to the Government. Honest mistakes incident to faithful and orderly compliance will, of course, occur, just as they have in the older procedures of the tax. The doubts expressed as to the existence of an overpayment in case it ultimately turns out that there is no tax, it is believed should be put to rest, and to this end the amendment to section 3770 [section 3770(c)] of the code was inserted in the Senate bill." (Emphasis supplied.)

Furthermore § 4(b) of that Act added subsection (e) to 26 U.S.C.A. § 322 providing that any tax deducted and withheld as provided by the Current Tax Payments Act should be deemed paid

not earlier than the fifteenth day of the third month following the taxable year. Thus this Act specifically provides for an inconsistency between date of payment for interest and for statute of limitation purposes, which indicates that Congress did not feel that consistency between the two was always required. The defendant contends that there should be consistency between payment for interest purposes and payment for statute of limitation purposes and that the test for interest purposes is that of bona fides. The Courts that have had to do with the interest problem have (with the exception hereafter referred to) not made use of the bona fides test. They have considered the feature as to whether or not the tax obligation had become defined by assessment as controlling. Herrick v. United States, D.C.N.Y.1952, 108 F.Supp. 20; Manee v. United States, D.C.N.Y.1951, 97 F.Supp. 993; Mitchell v. Westover, D.C.Cal.1950, 90 F.Supp. 278; Murphy v. United States, D.C.Cal. 1948, 78 F.Supp. 236. In each of those cases the Government successfully defended against a claim of a taxpayer for interest on money transferred to a Federal tax authority on the ground that formal assessment was lacking. In the case of Reading Co. v. United States, 1951, 98 F.Supp. 598, 120 Ct.Cl. 223, the Court of Claims made use of the bona fides test. That Court cited and relied upon its earlier opinion in the case of Hanley v. United States, 1945, 63 F. Supp. 73, 105 Ct.Cl. 638. The Court of Claims in the Reading case was of the view that the Current Tax Payments Act made a change in the existing law. The United States Court of Appeals for the Fifth Circuit recently held that the Current Tax Payments Act did not have the effect of fixing a starting point for the statute of limitation different from that applied in the Rosenman case, supra. Thomas v. Mercantile Nat. Bank, 5 Cir., 1953, 204 F.2d 943. The Court of Claims seems to stand alone in using the bona fides test.

The defendant contends that the Rosenman case is distinguishable be-cause that case involved the statute of limitation applicable to estate taxes, 26 U.S.C.A. § 910, which uses the phrase " * * * erroneously or illegally assessed or collected * * * " whereas the statute of limitations applicable in the instant case uses the term "overpayment." Several lower Federal Courts at one time did make a distinction between the statute of limitations provided in 26 U.S.C. § 3313 and that provided in 26 U.S.C. § 322 based upon this difference in language. See, for example, Sbarbaro v. United States, D.C.Ill.1947, 73 F.Supp. 213. However in Jones v. Liberty Glass Co., 1947, 332 U.S. 524, 68 S.Ct. 229, 92 L.Ed. 142, the United States Supreme Court refused to recognize a distinction based on this change in language and overruled those cases making such a distinction. Congress apparently must have considered the terminology synonymous, for in enacting the 1954 Internal Revenue Code the term "overpayment" is used in place of the longer phrase "erroneously or illegally assessed or collected" in the statute of limitations section. 1954 Int.Rev.Code, § 6511, 26 U.S.C.A. Section 6511 replaces the former statutes of limitation contained in 26 U.S.C. §§ 322, 910, 3313. See legislative history 1954 U.S.Code Congressional and Administrative News, pp. 4134, 4563, 4778, 5235.

If then, as the Rosenman case, supra, holds, the date the tax obligation became defined is the significant date, then in the instant case the question to be determined is as to which event defined the tax liability.

An analysis of the tax collecting procedures points to one act as the significant event so far as defining the tax liability. That act is the signing by the Commissioner of the assessment certificate which accompanies the assessment list. It was held in Welch Insurance Agency v. Brast, 4 Cir., 1932, 55 F.2d 60, and Davidovitz v. United States, 1932, 58 F.2d 1063, 75 Ct.Cl. 211, that the assessment occurs when the Commissioner signs the assessment certificate. At the time the events in the instant

case occurred, only the Commissioner had authority to assess taxes. By Act of Congress August 27, 1949, the Commissioner was authorized to delegate this function. 63 Stat. 668, 26 U.S.C.A. § 3647. It is not until the assessment certificate is signed that the Collector is directed to proceed with the collection of the tax. 26 U.S.C.A. § 3641. The receipt by the Collector of the assessment list gives rise to the tax lien. 26 U.S. C.A. § 3671. Macatee, Inc., v. United States, 5 Cir., 1954, 214 F.2d 717. It is the act of assessment that starts the statute of limitations on collection running against the Commissioner, 26 U.S. C.A. § 276(c).

The certificate appearing on the assessment lists indicates that this act is regarded by the Commissioner as defining the tax liability. The certificate reads:

> "I hereby certify that I have made inquiries, determinations, and assessments of taxes, penalties, etc., of the above classification specified in these lists, and find that the amounts of taxes, penalties, etc. stated as corrected and as specified in the supplementary pages of this list made by me are due from the individuals, firms, and corporations opposite whose names such amounts are placed, and that the amount chargeable to the collector is as above."

The case of Thomas v. Mercantile Nat. Bank, supra, holds that it is the act of assessment that defines the tax liability. To the same effect are Paschal v. Blieden, 8 Cir., 1942, 127 F.2d 398, which held that assessment established prima facie liability for the tax and Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, where the Court said, 295 U.S. at pages 259–260, 55 S.Ct. at page 699:

> "The statute prescribes the rule of taxation. Some machinery must be provided for applying the rule to the facts in each taxpayer's case, in order to ascertain the amount due. The chosen instrumentality for the purpose is an administrative agency whose action is called an assessment. * * * Once the tax is assessed, the taxpayer will owe the sovereign the amount when the date fixed by law for payment arrives. * * * The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt."

The most recent case dealing with the question of a money transfer into the "Suspense Account" of the Collector is the case of Lewyt Corp. v. Commissioner, 2 Cir., 1954, 215 F.2d 518. In that case there was involved the question as to whether certain excess profits taxes had been "paid" within the taxable year under Section 122(d)(6). In that case, predicated upon an examination of the taxpayer's records showing that an additional amount of excess profits taxes were owing, the taxpayer transferred money to the Collector which was deposited by him in the "Suspense Account." The taxpayer contended that the money transferred constituted the payment of the additional taxes involved. The Court held that the remittances did not constitute "payment" of such taxes. On December 6, 1954, certiorari was granted in that case. However, the grant of certiorari was limited to two questions which are not involved in the instant case.

It is the view of the Court that the transfers of money made by the taxpayer in the instant case did not have the status of "payment" until the tax deficiencies were formally assessed by the Commissioner. It is the holding of the Court that the taxpayer's claim for refund was timely under Section 322(b)(1) of 26 U.S.C.A.

The claims heretofore considered relate to all of the amount claimed in the taxpayer's Fourth cause of action and a substantial part, but not all, of the amount claimed in the taxpayer's First cause of action. There remains for consideration the amount of $934.67 claimed by the taxpayer in its First cause of action and the amount claimed by the tax-

payer in its Third cause of action which is now $3,801.54.

The taxpayer in its returns for 1941, 1942 and 1943 elected to use the so-called "Lifo" method of inventory accounting in connection with both its raw materials and finished products, as permitted by Sec. 22(d) of 26 U.S.C.A. The "Lifo" method, referred to as the last-in first-out method, is an accounting procedure employed in computing a closing inventory whereby it is assumed that the goods on hand are made up of the earliest rather than the most recent purchases. It has the effect of using the more recent cost of goods in computing the cost of goods sold and in a period of inflation will tend to reduce taxes.

On October 9, 1944, Treasury Decision 5407 was promulgated. This Decision amended existing tax regulations to provide that taxpayers who had adopted the "Lifo" inventory method could elect to have that method apply to raw materials only. That Decision provides in part:

"Upon written notice addressed to the Commissioner by the taxpayer, a taxpayer who has heretofore adopted the elective inventory method in respect to any goods may adopt the method herein authorized and limit the election to the raw material including raw materials entering into goods in process and in finished goods. If this method is adopted as to any specific goods, it must be used exclusively for such goods for any previous year (not closed by agreement) to which the previous election applies and all subsequent years, unless permission to change is granted by the Commissioner."

Form 970, used in connection with the election of a taxpayer to avail itself of the provisions of that Decision, provides in part:

"The taxpayer hereby agrees to such adjustments incident to the change to the elective method, or to the use of such method, or to any later change from such method, in the inventories of prior taxable years or otherwise, as the Commissioner of Internal Revenue upon the examination of the taxpayer's returns for the years involved may deem necessary in order that the true income of the taxpayer will be clearly reflected. * * * "

On June 20, 1946, the taxpayer in the instant case gave notice to the Commissioner of its election under Treasury Decision 5407 to confine its use of the "Lifo" method to raw materials only. Following such election and pursuant to the provisions of Treasury Decision 5407, the Commissioner redetermined the taxpayer's income and excess profits taxes for the years 1941, 1942 and 1943 in which the taxpayer had used the "Lifo" method in order that the taxpayer's income and excess profits taxes might reflect taxpayer's election to confine the "Lifo" method to raw materials. Such redetermination showed an overassessment of income tax for 1941 of $3,861.78 and an overassessment of income tax for 1942 of $3,801.58, and for 1943 a deficiency of $2,869.88 (in declared value excess profits tax) and $35,884.71 (in excess profits tax). On May 28, 1948, the taxpayer filed claim with the Commissioner for the refund of the overassessments for the years 1941 and 1942 shown by the redetermination. This claim was denied by the Commissioner on the ground that the same was barred by the statute of limitation contained in Section 322(b)(1) of 26 U.S. C.A. Based upon the redetermination the Commissioner in a notice of deficiency dated May 24, 1950, declared deficiencies for the year 1943 for $2,869.88 (in declared value excess profits tax) and $35,884.71 (in excess profits tax). The taxpayer contested these deficiencies in the Tax Court. The Tax Court in an Order dated July 28, 1953 (Dubuque Packing Co. v. Commissioner of Internal Revenue—Docket No. 29958), upheld the deficiencies asserted by the Commissioner in respect to the year 1943. Said Order became final not later than November 6, 1953.

It is the position of the defendant that the claim of the taxpayer for the over-assessments for the years 1941 and 1942 are barred by the two-year statute of limitation contained in Section 322(b) (1). It is the position of the taxpayer that its claim for such overassessments is saved from being barred by the provisions of Section 3801 of 26 U.S.C.A. That Section provides as follows:

"(a) Definitions. For the purpose of this section—

"(1) Determination. The term 'determination under the income tax laws' means—

\* \* \* \* \* \*

"(B) A decision by the Board of Tax Appeals or a judgment, decree, or other order by any court of competent jurisdiction, which has become final;

\* \* \* \* \* \*

"(b) Circumstances of adjustment. When a determination under the income tax laws—

"(1) Requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer;

\* \* \* \* \* \*

and, on the date the determination becomes final, correction of the effect of the error is prevented by the operation \* \* \* of any provision of the internal-revenue laws other than this section and other than section 3761 (relating to compromises), then the effect of the error shall be corrected by an adjustment made under this section. Such adjustment shall be made only if there is adopted in the determination a position maintained by the Commissioner \* \* \* which position is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be. \* \* \*

"(c) Method of adjustment. The adjustment authorized in subsection (b) shall be made by assessing and collecting, or refunding or crediting, the amount thereof, to be ascertained as provided in subsection (d), in the same manner as if it were a deficiency determined by the Commissioner with respect to the taxpayer as to whom the error was made or an overpayment claimed by such taxpayer, as the case may be, for the taxable year with respect to which the error was made, and as if on the date of the determination specified in subsection (b) one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund for such taxable year."

The taxpayer complains of the end result of the Commissioner's redetermination of taxes for the years 1941, 1942, and 1943 in light of its election under Treasury Decision 5407. It states that it has to pay a large deficiency for 1943, which was an "open" year so far as the collection of a deficiency from it is concerned, while it has been refused refunds for overassessments for 1941 and 1942 on the ground that those years are "closed" years for refunds because of the statute of limitations.

Section 3801 provides for an exception to the statute of limitations in certain cases. It is evident that the intent of Congress in enacting that Section was to prevent the inequities resulting from the adoption of a position by a Federal tax authority for an "open" year which was inconsistent with the position taken in a "closed" year.

The intent of Congress is indicated in the Senate Finance Committee Report. Senate Rep. No. 1567, 75th Congress, 3d Session, p. 49:

"In each case, under existing law, an unfair benefit would have been obtained by assuming an inconsistent position and then taking shelter behind the protective barrier of the

statute of limitations. Such resort to the statute of limitations is a plain misuse of its fundamental purpose. The purpose of the statute of limitations to prevent the litigation of stale claims is fully recognized and approved. But it was never intended to sanction active exploitation, by the beneficiary of the statutory bar, of opportunities only open to him if he assumes a position diametrically opposed to that taken prior to the running of the statute. * * * Legislation has long been needed to * * * [take] the profit out of inconsistency, whether exhibited by taxpayers or revenue officials and whether fortuitous or the result of design.

"The legislation here proposed is based upon the following principles:

"(1) To preserve unimpaired the essential function of the statute of limitations, corrective adjustments should (a) never modify the application of the statute except when the party or parties in whose favor it applies shall have justified such modification by active inconsistency, and (b) under no circumstances affect the tax save with respect to the influence of the particular items involved in the adjustment.

"(2) Subject to the foregoing principles, disputes as to the year in which income or deductions belong, or as to the person who should have the tax burden of income or the tax benefit of deductions, should never result in a double tax or a double reduction of tax, or an inequitable avoidance of tax."

■ In order for the taxpayer to sustain its claim for the refund of the overassessments in question under Sec. 3801, it must establish that there was a final determination; that such determination related to an item includable in its gross income; that such item was erroneously included in its gross income for another taxable year; that the correcting of the alleged error by normal procedure is pre-vented and that there was adopted in the determination a position maintained by the Commissioner which was inconsistent with the erroneous inclusion of the item of gross income of a prior taxable year.

It is clear that the decision of the Tax Court as to the declared deficiencies of the Commissioner for the year 1943 was a final determination. It is also clear that the alleged "error" cannot be corrected by normal procedure.

■ The defendant contends that a change in the valuation or cost attributed to physical inventory is not an "item" of gross income within the purview of that Section. It was pointed out in Gooch Milling & Elevator Co. v. United States, 1948, 78 F.Supp. 94, 98–99, 111 Ct.Cl. 576, that a change in the valuation of inventory has a direct effect on gross income. A change in the method of valuing inventory, such as is here involved, does not change the physical items in that inventory. It merely changes the valuation attributed to those physical items. This clearly is true with the "Lifo" inventory method. A physical matching of goods is not necessary under the "Lifo" method. Hutzler Bros. Co. v. Commissioner, 1947, 8 T.C. 14, 26; T.D. 5605, 1948. "Lifo" reaches its valuation by assuming that the goods remaining in the inventory are those goods which were first acquired. In H. T. Hackney Co. v. United States, 1948, 78 F.Supp. 101, 111 Ct.Cl. 664, the issue of whether inventory valuation was an item of income within Section 3801 was clearly presented. The Court there held that inventory valuation was an "item" of income. This Court is likewise of the opinion that inventory valuation is an item of gross income within the provisions of Section 3801.

Further support for this view is found in the case of American Pad & Textile Co. v. Commissioner, 1951, 16 T.C. 1304. That case arose under Section 734 of Title 26. That section has since been repealed but while in existence it operated to mitigate the effect of the statute of limitations where in computing

excess profits tax liability an item of income was treated inconsistently with the treatment accorded it in computing the income tax liability for the prior year. Section 734 contained the same requirements as Section 3801. In the American Pad & Textile Co. case the question presented was the proper method for valuation of income received in a foreign currency. The Court decided the proper valuation method to be used and held the proper adjustment could be made under Section 734.

It has been heretofore noted that in order to bring a case within the provisions of Sec. 3801 there must be an "erroneous inclusion" of an item of gross income and the Commissioner must have maintained an inconsistent position in regard to such inclusion.

In the case of Gooch Milling & Elevator Co. v. United States, 1948, 78 F. Supp. 94, 111 Ct.Cl. 576, the taxpayer had, through error, included in its inventory certain wheat to which it did not have title. In the case of H. T. Hackney Co. v. United States, 1948, 78 F.Supp. 101, 111 Ct.Cl. 664, a branch manager of the taxpayer had systematically falsified inventory valuations, which erroneous valuations were included by the taxpayer in its tax returns. In both cases the Court of Claims held that such inclusion constituted an "erroneous inclusion" within the provisions of what is now Section 3801 and that the Commissioner had maintained an inconsistent position in relation thereto. In the case of Gooch Milling & Elevator Co. v. United States, supra, the Court stated, 78 F. Supp. at page 100:

> "It is our opinion that in the enactment of Section 820, Congress had in mind and intended to provide a fair and workable formula under which taxpayers and the Government would be given relief from the unfair and unjust results occasioned by *corrections*, by final determinations, *of errors* of either the taxpayer or the Commissioner of Internal Revenue, or both, in connection with the proper treatment of

> items affecting taxable income and tax liability in more than one year." (Emphasis supplied.)

Section 820 referred to is now Section 3801.

A "Lifo" method taxpayer desiring to secure the benefits of limiting that method to raw materials only, as permitted by Treasury Decision 5407, makes an election as provided by that Decision. Such election operates prospectively; i. e., as to inventory valuations for future years. It also operates retroactively; i. e., as to inventory valuations for past years in which the taxpayer had availed itself of the non-limited "Lifo" method.

In the present case the redetermination of the value of the taxpayer's inventories for the past years 1941, 1942 and 1943, in which it had availed itself of the non-limited "Lifo" method in light of its election of the limited "Lifo" method, resulted in inventory valuation changes for all of those years. Such inventory valuation changes for the years 1941 and 1942 showed overassessments for those years. Such inventory valuation changes for 1943 showed a deficiency. It so happened that the year 1943 was an "open" year for the collection of a deficiency, while the years 1941 and 1942 were "closed" years as to refunds.

In the instant case there would seem to be missing the feature of an "erroneous" inclusion of an item of gross income. Prior to the redeterminations brought about by the election of the taxpayer to make use of the limited "Lifo" method, the inventories for the years 1941, 1942 and 1943 did not contain or include any "erroneous" item of gross income. The inventory valuations were then proper and correct under the non-limited "Lifo" method. The election of the taxpayer to make use of the limited "Lifo" method permitted the Commissioner to adjust the inventory values for those years in accord with the taxpayer's election. The Commissioner adjusted the inventory values for all of those years in accord with the taxpayer's election.

When the inventory valuations were adjusted for the years 1941, 1942 and 1943 in light of the taxpayer's election, the closing inventory for 1941 was in accord with the opening inventory for 1942 and the closing inventory for 1942 was in accord with the opening inventory for 1943.

It is the claim of the taxpayer that the Commissioner was guilty of inconsistency in the matter of the adjustment of the opening and closing inventories for the years in question. It is the claim of the taxpayer that it was inconsistent for the Commissioner to assess a deficiency against it for 1943 based on inventory valuation adjustment and to deny it refunds of the overassessments for the years 1941 and 1942 based on inventory valuation adjustment.

█ It is the view of the Court that the Commissioner has not taken nor maintained an inconsistent position. The Commissioner throughout consistently computed the taxpayer's taxes based upon the taxpayer's election under Treasury Decision 5407. It is the holding of the Court that the taxpayer has not brought its claim for refund for the years 1941 and 1942 within the provisions of Section 3801. Therefore, its claim for such refund is barred by the provisions of Section 322(b)(1).

Section 3801 was enacted by Congress as Section 820 of the Revenue Act of 1938. In a report made by The Standing Committee on Federal Taxation of the American Bar Association, its repeal was recommended on the ground that it does not succeed in solving the problem sought to be solved. See Mitigation of the Statute of Limitations in Federal Tax Cases by Arthur H. Kent, 27 California Law Review 109, 139. That Section, so it would seem, does not solve the problem of the taxpayer in the present case.

For the Commissioner to forego assessing a reasonably certain deficiency for an "open" year because of overassessments for closed years would seem to amount to an unauthorized assumption of the power on his part to remit tax liability. See Mitigation of the Statute of Limitations in Federal Tax Cases, supra, p. 143.

The taxpayer suggests that its election under Treasury Decision 5407 had the effect of tolling the provisions of Section 322(b)(1) as to its claim. It also suggests that if the election itself did not of itself toll the provisions of that Section, the Commissioner's action constituted an agreement to reopen the barred years for the purpose of inventory adjustments for the benefit of both the taxpayer and the Commissioner.

Treasury Decision 5407 contains no provision for nor makes any reference to the bar of Section 322(b)(1) being removed as to refunds for any overassessments occasioned when the inventories of a taxpayer are adjusted in light of its election thereunder. It is the holding of the Court that neither the election of the taxpayer to avail itself of the benefits of Treasury Decision 5407 nor the action of the Commissioner by virtue of such election saved the claim of the taxpayer here under consideration from the bar of Section 322(b)(1).

It was heretofore noted that the defendant asserted a counterclaim against the plaintiff in connection with a refund check issued to the plaintiff. On May 21, 1954, the defendant issued a refund check to the plaintiff in the sum of $29,112.25. It is the claim of the defendant that through error in computation the check was in an excessive amount and that the check should have been in the sum of $27,818.61. The Court finds that the defendant has established its claim in relation to said refund check and that the check was excessive in the sum of $1,293.94.

The decision of this Court is as follows:

(1) The plaintiff is entitled to recover on its First cause of action the sum of $2,927.11 with interest as provided by law.

(2) The plaintiff's Second cause of action was satisfied in full prior to trial.

, (3) The plaintiff is not entitled to recover on its Third cause of action.

(4) The plaintiff is entitled to recover on its Fourth cause of action. The amount of its recovery therein is the sum of $6,847.43, with interest as provided by law, less the amount of the overpayment of $1,293.94 with interest as provided by law.

(5) That no costs shall be awarded to either party.

It is ordered that judgment shall be entered in accord with the foregoing decision.

It is further ordered that under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the findings of fact and conclusions of law contained in the foregoing opinion shall constitute the findings of fact, conclusions of law, and order for judgment in this case.