## H. T. HACKNEY CO., Inc. v. UNITED STATES.

### No. 47284.

Court of Claims.

June 1, 1948.

Scott P. Crampton, of Washington, D. C. (Geo. E. H. Goodner, of Washington, D. C., on the brief), for plaintiff.

H. S. Fessenden, of Washington, D. C., and Theron Lamar Caudle, Asst. Atty. Gen. (Robert N. Anderson, Andrew D. Sharpe, and Joseph H. Sheppard, all of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

LITTLETON, Judge.

Plaintiff overpaid its income tax for the calendar years 1933 and 1934; for the fiscal period ending June 30, 1935, and for the fiscal years ending June 30, 1936 to 1938, inclusive. These overpayments resulted from the computation of excessive operating profit for each year by reason of overvaluation on plaintiff's books and in its returns of the closing merchandise inventory for 1933, and the opening and closing inventories for each year thereafter to and including the closing inventory for the fiscal year ending June 30, 1938.

Plaintiff discovered the error in January 1939 (six months after the close of the fiscal year 1938), but before the cumulative effect of the erroneous overstatements could be worked out and corrected, the original return for the fiscal year 1939 was prepared and filed by plaintiff on September 15, 1939, and the operating profit shown therein was computed on the basis of a correct closing inventory and on overvalued opening inventory. At the time this return was prepared and filed it was the intention and understanding of plaintiff that an amended return for that year would be filed as soon as the correct or approximately correct opening inventory could be determined (finding 8). By using the inflated opening inventory and a correct closing inventory for the fiscal year 1939, plaintiff's operating profit and net income were understated.

During a period beginning in the early part of 1933 and ending December 31, 1938, a manager of one of plaintiff's branch stores systematically inflated the inventory at the

branch store managed by him. He did this without plaintiff's knowledge in order that the earnings of his store would compare favorably with the earnings of other branch stores operated by plaintiff. The discrepancy was first discovered by plaintiff about January 10, 1939, when the branch manager was retired. None of plaintiff's property was taken by the branch manager, but his store did not have on hand the inventory reported by him with the result that this branch store, and, therefore, the plaintiff, did not actually realize in the taxable periods involved the income reported by plaintiff in its returns for those periods. Plaintiff commenced an investigation and audit to determine the correct inventories and correct income, and upon completion thereof found that as a result of the amount erroneously added to the closing inventory for each taxable period from January 1, 1933, to June 30, 1938, the closing inventory for the fiscal year 1938 and the opening inventory for the fiscal year 1939, as well as the opening and closing inventories for each prior year, had been greatly inflated and overstated. From this investigation plaintiff concluded that the closing inventory for 1938 and the opening inventory for 1939 had been overstated and overvalued by approximately $60,000.

An amended return reporting an increase of $75,226.66 in net income for the fiscal year 1939 was, therefore, prepared and filed, and at the same time an amended return for 1938 was filed showing a decrease in net income for that year from $75,058.73 to $72,035, and an overpayment of $453.56. A claim for refund and credit for 1938 accompanied this return. This claim for refund, for the fiscal year ending June 30, 1938, was a timely claim under the ordinary statute of limitations relating to refunds, and it was considered and allowed in the amount of $750.30 in a final determination by the Commissioner in 1943. In his audit of the return for 1938 and his final determination and disposition of the refund claim, the Commissioner determined, on the basis of a revenue agent's audit report, the amounts by which the opening and closing inventories for that year and each of the prior years, back to the calendar year 1933,

had been overstated. The year 1938 involved all the inventory errors that had been made and which had accumulated to June 30, 1938. The accumulated inflation to June 30, 1937, was $62,000, and the Commissioner reduced the opening inventory for the fiscal year 1938 by that amount. The inventory during the year was further inflated by $5,000, and the Commissioner reduced the closing inventory by $67,000 ($62,000 plus $5,000).

These inventory adjustments produced an additional tax of $10,251.21 for the year 1939. The plaintiff, by an amended return theretofore filed, corrected the opening inventory for the fiscal year beginning July 1, 1938, and ending June 30, 1939, and on September 2, 1942, voluntarily paid an additional tax of $11,168.60, in excess of the tax of $161.03, paid on the original return.

As we have said, plaintiff became aware of the fact that its inventories to June 30, 1933, had been inflated long before it made its original return for 1939 but was not in possession of sufficient facts to enable it to correct the opening inventory and state its correct income for the fiscal year 1939 when it filed its original return at the time required. The plaintiff's correction in the fiscal year 1939, with the approval of the Commissioner, of the erroneous overstatements in inventories and operating profits included in income in prior years, had the effect of shifting an item of income to 1939, that is, portions of the operating profits computed for such prior years, in the total amount of $67,000, in which year such income was again taxed.

The Commissioner, in May 1943, refunded by credit the overpayment by plaintiff for the fiscal year 1937, under Section 734 of the Internal Revenue Code, as amended, Repealed Nov. 8, 1945, 26 U.S.C.A.Int.Rev. Code, §§ 710–736, and that year is not here involved. Plaintiff overpaid its tax for the four taxable periods here involved, as follows:

Calendar year 1933 ............ $2,062.49
Calendar year 1934 ............ 2,750.00
First six months of 1935 ........ 687.50
Fiscal year ended June 30, 1936.. 1,964.73

Total .................... 7,464.72

The sole cause of these overpayments was the erroneous inclusion in net income for each year of an item of income, to wit, excessive operating profit, determined and computed upon the basis of erroneous and overvalued inventories. Unless plaintiff is given judgment for these overpayments it will be denied the relief for which we think Congress intended to provide by Section 820 of the Revenue Act of 1938, 26 U.S.C.A Int.Rev.Code, § 3801.

■■ On the merits plaintiff's claim is governed by our opinion and decision in Gooch Milling & Elevator Company v. United States, Ct.Cl., 78 F.Supp. 94. Plaintiff filed claims for refund for the taxable years and period here involved, within one year after the Commissioner's final determination on the allowance of plaintiff's claim for refund for the fiscal year 1938 (findings 13 and 16). The claims here involved were formally disallowed on September 25, 1946, on the sole ground that the term "item" used in Section 820(b) does not include the result flowing from an increase or decrease in operating profit or loss through adjustments in two or more years in the cost or value of inventories. We have held in the Gooch Milling & Elevator Company case, supra, that this interpretation of Section 820 is too limited and is, therefore, incorrect. On the authority of that case plaintiff is entitled to recover.

■ Counsel for defendant argue, however, that plaintiff may not recover on the asserted ground that there was no final determination within the meaning of Section 820(a). It is argued that plaintiff's rights must be based solely upon what was done by the Commissioner with respect to the fiscal year 1939, and since there was not a closing agreement under § 606 of the Revenue Act of 1928 as amended by § 801 of the Revenue Act of 1938, 26 U.S.C.A.Int. Rev.Code, § 3760, this suit may not be maintained. We do not agree. We think it is clear that there was a final determination within the language and intent of subsection (a) (1) (C) (i) of Section 820, when the Commissioner, in a final determination on the claim for refund for 1938, gave authoritative sanction to the inconsistent treatment by plaintiff in its amend-

ed returns for 1938 and 1939 with that which had occurred in the years 1933 to and including the fiscal year ending June 30, 1938. What occurred with respect to the fiscal year 1939 is, in our opinion, unimportant under the facts in this case, insofar as plaintiff's right to recover is concerned. For the year 1939 plaintiff voluntarily corrected the inventory errors so far as that year was concerned, and reported and paid the additional tax due before it was determined and assessed by the Commissioner. It is true that the Commissioner thereafter approved what plaintiff had done, but so far as Section 820 is concerned, he did more than merely give approval to an amended return when he made an authoritative and final decision and determination allowing and disposing of the claim for refund for the fiscal year 1938. Subsection (a) (1) (C) (i) provides as follows:

"(a) Definitions. For the purpose of this section—

"(1) Determination. The term 'determination under the income tax laws' means — * * *

"(C) A final disposition by the Commissioner of a claim for refund. For the purposes of this section a claim for refund shall be deemed finally disposed of by the Commissioner—

"(i) as to items with respect to which the claim was allowed, upon the date of allowance of refund or credit or upon the date of mailing notice of disallowance (by reason of offsetting items) of the claim for refund, * * *."

In commenting on the above-quoted subsection the Senate Finance Committee stated in its report on Section 820 (Rep. No. 1567, 75th Cong., 3rd sess.), at page 50, in part, as follows:

"Inasmuch as an adjustment should not be made until the inconsistent position asserted by the taxpayer or the Commissioner has been successfully maintained, subsection (b) is not operative until there is a final 'determination' which gives authoritative sanction to the inconsistent action. *Subsection (a) describes the types of determinations which are prerequisite to the operation of this section.*" [Italics supplied.]

We find nothing in the language of Section 820, or its history, that would compel the conclusion, under facts such as we have here, that plaintiff's right to maintain this suit should be held to be governed solely and entirely by the action of the Commissioner in approving plaintiff's amended return for 1939, and assessing, in part, the additional tax previously paid on the basis thereof. The Commissioner appears to have taken this view concerning Section 820(a). After he had made a determination in January 1943, finally disposing of the claim for refund for 1938, he allowed plaintiff a refund by credit in May 1943, of the overpayment for 1937 resulting from the inventory error, and his disallowance of the claims for refund for 1933 to 1936, inclusive, was not based upon the absence of a final determination within the meaning of subsection (a) but upon the ground that the result flowing from corrections of inventory errors and adjustments of operating profits did not come within the provisions of subsection (b) of Section 820.

The facts bring this case within the letter as well as the spirit of the statute, both with respect to the merits and plaintiff's right to recover the overpayments involved. Section 820 is a relief provision and we interpret its provisions accordingly.

Judgment is, therefore, entered in favor of plaintiff for $7,464.72, with interest at six percent per annum as provided by law. It is so ordered.