**UNITED STATES of America,**
**Appellant,**

v.

**Ed RACHAL, Appellee.**

**No. 19701.**

United States Court of Appeals
Fifth Circuit.

Dec. 27, 1962.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Karl Schmeider, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., Woodrow Seals, U. S. Atty., John H. Baumgarten, Asst. U. S. Atty., for appellant.

Robert B. Wallace, Corpus Christi, Tex., for appellee.

Before HUTCHESON, WISDOM, and GEWIN, Circuit Judges.

WISDOM, Circuit Judge.

This income tax case involves claims for refunds of $514.71 for 1948 and $5,-263.59 for 1949 under the provisions mitigating the effect of the statute of limitations, Section 3801 of the Internal Revenue Code of 1939 and Sections 1311–1315 of the 1954 Code. In certain circumstances, when an error has been made in the inclusion or exclusion of income or in the allowance or disallowance of a deduction or in the tax treatment of a transaction affecting the basis

of property, the error may be corrected even though the statute has run. The purpose of the mitigating provisions is to prevent either the Commissioner or the taxpayer assuming an inconsistent position and then finding cover behind the statute of limitations. See 2 Mertens, Law of Federal Income Taxation, Chap. 14 (1961 Revision) and Maguire, Surrey and Traynor, Section 820 of the Revenue Act of 1938, 48 Yale L.J. 509, 717 (1939). See also Mullock, The Inconsistent Position: Section 1311(b)(1), 12 Mercer L.Rev. 300 (1962), listing recent writings on Sections 1311–1315.

In order for the taxpayer to prevail, he must show that:

(1) The Commissioner has made *a final determination,* as defined in Section 3801(a)(1) and Section 1313(a), since an adjustment may not be made until there is an authoritative sanction to the inconsistent position allegedly asserted;

(2) the operative effect of the determination comes within the *"circumstances of adjustment"*, types of errors involving inconsistent actions specified in Section 3801 and Section 1312; and

(3) the Commissioner has maintained an *inconsistent position* with respect to the errors sought to be corrected, as required by Section 3801(a)(1) and 1311(b).

The Commissioner, the appellant, contends that the district court erred in holding that the taxpayer met any of these requirements. We affirm.

## I.

### The Facts

There is no dispute as to the facts.

March 15, 1949, the taxpayer, a cattle-raiser, reported and paid an income tax liability of $111,354.14 for 1948. March 15, 1950, he reported and paid $58,430.60 for 1949. After an examination of these returns the examining agent recommended a change in the unit price which materially affected the taxpayer's costs and inventories of cattle. The agent's report,

dated November 2, 1951, set the cattle inventories at the following figures:

|  | "1948 | 1949 |
|---|---|---|
| Opening inventory | $227,850.00 | $443,490.54 |
| Closing inventory | 443,470.54 | 465,334.40" |

As a result of this report, the Commissioner assessed deficiencies of $93,165.36 for 1948 and $9,911.70 for 1949. The taxpayer paid these amounts, plus interest, March 31, 1952.

June 25, 1953, the taxpayer filed claims for refunds for the year 1948 and 1949, alleging that the Commissioner had erred in his treatment of the cattle inventory. The statute of limitations, Section 322(b)(2)(B) of the 1939 Code, barred recovery under the usual procedures, since the claims were filed more than three years after March 15, 1949, and March 15, 1950, when his 1948 and 1949 returns were filed. (Similarly, subsequent claims of August 30, 1954, also were filed more than three years after his tax return). However, claims for refunds of the deficiencies, which were paid in 1952, were not barred by Section 322.

As a result of the taxpayer's filing these claims for refunds, the Internal Revenue Service re-examined the cattle inventories for the years 1948 through 1952. This time, by a report dated May 1, 1954, the second examining agent recommended downward adjustments in the costs and inventories. This report set the plaintiff's cattle inventories at the following figures:

| Year | Opening Inventory | Closing Inventory |
|---|---|---|
| 1948 | $227,850.00 | $328,972.04 |
| 1949 | 328,972.04 | 340,507.92 |
| 1950 | 340,507.92 | 316,350.96 |
| 1951 | 316,350.96 | 329,949.07 |
| 1952 | 329,949.07 | 135,350.56 (9–2–52) |

The taxpayer had reported his cattle inventories on his tax returns filed for the

taxable years *1950, 1951 and 1952* as follows:

| Year | Opening Inventory | Closing Inventory |
|---|---|---|
| 1950 | $335,200.00 | $348,000.00 |
| 1951 | 425,270.00 | 431,655.96 |
| 1952 | 431,655.96 | 172,488.77 (8–31–52) |

| | | 1948 | 1949 |
|---|---|---|---|
| 1. | Payments: | | |
| | Original return | $111,354.14 | $58,340.60 |
| | Assessment (1–1–52) | 93,165.36 | 9,911.70 |
| | Total payments | $204,519.50 | $68,252.30 |
| 2. | Less: Correct tax liability | $110,639.43 | $53,077.01 |
| | Overpayment of income taxes | 93,680.07 | 15,175.29 |

The report of examination dated May 1, 1954, computed plaintiff's correct income tax liability at $110,839.43 for 1948 and $53,077.01 for 1949. On the basis of this report, the plaintiff had overpaid his income taxes for 1948 and 1949 computed as follows:

June 16, 1954, the Service refunded to the taxpayer with interest the amounts of $93,165.36 and $9,911.70, assessed for 1948 and 1949 and paid by the taxpayer March 31, 1952. The Service refused to refund the $514.71 for 1948 and $5,262.59 for 1949, although these were admittedly overpayments. The Commissioner allowed the refund of the payments of the deficiencies, because these were paid during the two years preceding the filing of claim for refund.

August 30, 1954, the taxpayer filed claims for refunds for the overpayments of $514.71 and $5,263.59. December 30, 1957, the Commissioner mailed statutory notices to the taxpayer disallowing the claims. March 18, 1959, the taxpayer filed suit for refunds.

There is no doubt that under Section 322(b) (2) (B) of the 1939 Code the claims for refunds would be prescribed. The issue is the applicability of the mitigating statutes to the facts.

## II.

### Final Determination

Section 3801(a) (1) of the 1939 Code defines "determination" as follows:

"(1) *Determination*. The term 'determination under the income tax laws' means—

"(A) A closing agreement made under section 3760;

"(B) A decision by the Board of Tax Appeals or a judgment, decree, or other order by any court of competent jurisdiction, which has become final;

"(C) A final disposition by the Commissioner of a claim for refund. For the purposes of this section a claim for refund shall be deemed finally disposed of by the Commissioner—

"(i) as to items with respect to which the claim was allowed, upon the date of allowance of refund or credit or upon the date of mailing notice of disallowance (by reason of offsetting items) of the claim for refund, and

"(ii) as to items with respect to which the claim was disallowed, in whole

or in part, or as to items applied by the Commissioner in reduction of the refund or credit, upon expiration of the time for instituting suit with respect thereto (unless suit is instituted prior to the expiration of such time). Such term shall not include any such agreement made, or decision, judgment, decree, or order which became final, or claim for refund finally disposed of, prior to August 27, 1938."

Section 1313(a) of the 1954 Code is substantially the same as Section 3801.

The Commissioner argues that the district court erred in finding there was any final determination: (1) Government Form 870, evidencing the allowance in part of appellee's claims for refunds for the years 1948, 1949, and 1950, was not the "closing agreement made under section 3760," which is required by Section 3801(a) (1) (A); (2) the revenue agent's report of May 1, 1954, was not a closing agreement nor a final disposition; and (3) a district court's order of dismissal entered February 24, 1958, in a suit for refunds involving 1951 was not a determination.

The taxpayer does not argue that Form 870 is a closing agreement or even that subsection (A) applies; rather, he urges that, in allowing the claims for 1948 and 1949, in part, the Commissioner was concurrently making a final determination on the portions of the claims disallowed. Since the entire claim for each year was based upon the inventory readjustments, allowance of that part of each claim not barred by the statute of limitations was a determination by the Commissioner accepting the correctness of the readjusted inventories. Thus, Form 870, evidencing the allowance of three claims for refund, and Form 1331, evidencing payments of these claims for refunds, constituted "a final disposition by the Commissioner of a claim for refund" within the statutory definition.

Here the particular items finally disposed of when the Commissioner allowed appellee's claims for refunds for 1948, 1949, and 1950 were the adjusted cattle inventories upon which the refunds were based. "The disposition with respect to an item as to which the claimant's contention is sustained usually becomes final on the date of allowance of the refund or credit." Note, Section 820: Equity in the Administration of the Revenue Act, 39 Colum.L.Rev. 460, 470 (1939). See 2 Mertens, Law of Federal Income Taxation § 14.14 (1961 Revision). Thus, in H. T. Hackney Co. v. United States, 1948, 78 F.Supp. 101, 110, 111 Ct.Cl. 664, the Court of Claims stated that "there was a final determination within the language and intent of subsection (a) (1) (C) (i) of Section 820 [Section 3801(a) (1) (C) (i) of the 1939 Code], when the Commissioner, in a final determination of the claim for refund for 1938, gave authoritative sanction to the inconsistent treatment by plaintiff in its amended returns for 1938 and 1939 with that which had occurred in the years 1933 to and including the fiscal year ending June 30, 1938." Similarly, the Third Circuit has held in First Nat'l Bank of Philadelphia v. Commissioner, 3 Cir., 1953, 205 F.2d 82, 84, n. 3, that

"[d]etermination under the income tax laws is defined in Section 3801 (a) (1) as including '[a] final disposition by the Commissioner of a claim for refund.' A claim for refund is there deemed final when the Commissioner allows refund or credit as to the items with respect to which the claim was allowed."

In the present case the "items with respect to which the claim was allowed" were the adjusted cattle inventories, and the Commissioner finally disposed of these inventories, under the terms of Section 3801(a) (1) (C), when he paid appellee's claims for refund in 1954.

There is no doubt that the revenue agent's report was not a closing agreement nor a final disposition of a

claim for refund; further administrative action is required. Louis Pizitz Dry Goods Co. v. United States, N.D.Ala. 1960, 185 F.Supp. 186, 188. We consider it unnecessary to discuss the district court's order dismissing the taxpayer's claim for refunds for 1951. As we see it, a payment of a refund is a final determination. The Commissioner, by adjusting cattle inventory for the years 1948 through 1952 allowed the taxpayer's claims for refund for 1948 and 1949. When he paid these claims on June 16, 1954, he made a final disposition, "determination", of the items of adjustment.

## III.

### Circumstances of Adjustment

Sections 3801 and 1312 list seven classes of cases in which the circumstances permit opening of a barred year to correct an error. Section 3801(b) (1) and Section 1312(1) allow an adjustment of tax when a determination requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another year.

The Commissioner argues that for an adjustment to be made here for 1948 and 1949, there should have been a determination that an item of income was included in the taxpayer's gross income for 1951, and the same item erroneously included in the gross income for 1948 and 1949. Here, the argument runs, at most there was a determination that the taxpayer had overvalued his closing inventories for 1949; but that "determination" did not require any items of income to be included in any years other than those for which he is seeking adjustment. And, contends the Commissioner, if the settlement of the taxpayer's liabilities for 1951 constituted a determination, it did not require any double inclusion of items for 1948 and 1949; the settlement involved a lump sum payment which included items other than inventory.

The Commissioner's arguments ignore the result flowing from a change in operating profits through adjustments in the value of inventories. If the first agent had used the unit price later used by the second agent, the Commissioner would not have contested the taxpayer's right to a refund from the adjustments. Thus:

"While it is true that inventories are not of themselves items of income or deduction, they are vital in the determination of gross income, and when their cost or value, as disclosed in a return, is changed, gross income is * * * directly affected and the result and amount by which income is affected and the amount in which it is increased or decreased, through an increase or decrease in the operating profit or loss, is as specific and identifiable as an item or dividends, salaries, loss or the like." Gooch Milling & Elevator Co. v. United States, 1948, 78 F.Supp. 94, 100, 111 Ct.Cl. 576. Cf., Gill v. Commissioner, 5 Cir., 1962, 306 F.2d 902.

The statute looks to the fact of a double inclusion of an *item* of gross income resulting from an inconsistent position on the part of the Commissioner, and not to the ultimate tax liability caused by the duplication. "Neither Section 3801 nor the case of MacDonald v. Commissioner, 17 T.C. 934 (1951), * * * requires that the *amount* erroneously claimed as a deduction in one year must be identical with the amount determined for another year—it is the *item of deduction or credit* which must be the same." First National Bank of Philadelphia v. Commissioner, 3 Cir., 1953, 205 F.2d 82, 85. As was said of the predecessor of Section 3801:

"Subsection (b) (1) emphasizes the reliance placed by Section 820 upon the 'item' concept of tax liability. The tax liability for a year is generally a unitary matter, and the concern is whether the correct dollars and cents total has been determined. Section 820, however, fastens upon the treatment accorded a particular item in different years regardless of the correct dollars and cents tax lia-

bility for those years." Maguire, Surrey, and Traynor, Section 820 of the Revenue Act of 1938, 48 Yale L.J. 509, 719, 751 (1939).

The district court found as a fact that the change in unit price changed the valuation of inventory and the cost of cattle and that this change had a direct effect on gross income; it shifted income from 1948 and 1949 to other years. The second agent's closing inventory in 1949 was $125,000 lower than the closing inventory of the first agent. The item of gross income on which the taxpayer paid twice was cattle inventory; the number of head of cattle was not changed.

Gooch Milling & Elevator Company v. United States, 1948, 78 F.Supp. 94, 111 Ct.Cl. 576, is a leading case holding that an item of inventory may constitute an item of income within the meaning of Section 3801. In that case the closing inventory for 1935 and the opening inventory for 1936 were overstated, resulting in an overassessment for 1935 and a deficiency for 1936. The court held that there the Commissioner's change in the inventory was an item of adjustment, that the second agent's report was inconsistent with the basis upon which the Commissioner had audited and closed the years 1935 and 1936 in the first examination, and that Section 3801 was applicable. The court said:

"Where a closing inventory for any taxable year is reduced, the opening inventory for the following taxable year is automatically reduced in the same amount, and, if there is no further elimination from or decrease in the inventory during such ensuing year, the operating profit and gross income are increased in the amount by which the value of the opening inventory is decreased.

"It is obvious, and is admitted, that the correction and adjustment of the closing inventory for 1935 had the direct effect of increasing taxable income for 1936, and produced a deficiency for that year.

" * * * The only change made by the Commissioner was the elimination in each year of the erroneously included value of an inventory item of the same character, yet the elimination of the amount or value erroneously included on account of that item affected the taxable income for the year in which eliminated and also the taxable income for the following year. As will hereinafter appear, the result in this case was to shift an amount of income from 1935 to 1936."

In H. T. Hackney Co. v. United States, 1948, 78 F.Supp. 101, 111 Ct.Cl. 664, the court, relying on Gooch, held that the term "item" includes "the result flowing from an increase or decrease in operating profit or loss through adjustments in two or more years in the cost or value of inventories." The court found that there was a "final determination" when the Commissioner, on the taxpayer's claim for refund for 1938, gave authoritative sanction to the inconsistent treatment by the taxpayer in its amended returns for 1938 and 1939 with that which had occurred in previous years. See also Moultrie Cotton Mills v. United States, 1957, 151 F.Supp. 482, 138 Ct.Cl. 208.

We conclude therefore that the circumstance of adjustment here was the double inclusion of an item of gross income in more than one year.

### IV.

#### Inconsistent Position

The district court found that the Commissioner had maintained an inconsistent position. The facts support this finding.

The ending inventory for the year 1948 was first found by the Commissioner on November 2, 1951, to be $443,470.50, then after the statute barred the year 1948 the Commissioner found on May 1, 1954, the same ending inventory for 1948 to be $328,972.04. Similarly, the Commissioner found on No-

vember 2, 1951, that ending inventory for the year 1949 was $465,334.40, then after the statute barred the year 1949 the Commissioner found on May 1, 1954, the same ending inventory for 1949 to be $340,507.92. In addition, the Commissioner on May 1, 1954, projected this changed position to all open years through the year 1952. The Commissioner argues that the inconsistency does not apply, because both positions of the Commissioner relate to the same years 1948 and 1949 and that 3801 requires inconsistency between the open years of determination and the closed year in which the item was erroneously included in income. But the effects flowed to an open year. It is fundamental that to change closing inventory of 1948 and 1949 also changes the beginning inventory for 1950 (an open year) and any later year similarly changed (here 1950 through 1952). Thus, in Gooch, the court held that "[t]he reduction made by the Commissioner in the closing inventory for 1935 automatically decreased the opening inventory for the fiscal year 1936, and had the effect of shifting the amount of this decrease to gross income for 1936." In so doing,

> "[t]he Commissioner acted inconsistently. In his determination of May 7, 1940, with respect to the fiscal year 1936, the Commissioner adopted a position which was inconsistent with the position the taxpayer had maintained with respect to the erroneous inclusion of 'option wheat' in its inventories, and which determination was also inconsistent with the basis on which the Commissioner had audited and closed the plaintiff's returns for years prior to the fiscal years 1935 and 1936. * * * When the determination made in May 1940, became final, 'the correction of the effect of the error,' made in years prior to the fiscal year 1936, was prevented by the operation of the provisions of the statute of limitations." 78 F. Supp. at 100–101.

See also H. T. Hackney Co. v. United States, 1948, 78 F.Supp. 101, 111 Ct.Cl. 664 and Moultrie Cotton Mills v. United States, 1957, 151 F.Supp. 482, 138 Ct. Cl. 208.

## V.

### Item of Income Subject to the Determination

The Commissioner's final argument is that the only item of income involved here is the opening inventory for 1951 and the closing inventory for 1950, for purposes of Section 3801(e) and 1314 (c); that there is no item of income involved for 1951 which is the same, "qualitatively" for 1948 and 1949, that is, no item which produced double taxation, for the three years.

We have touched on this point earlier. Item as used in the statute "include[s] any item or amount which affects gross income in more than one year, and produces, as a result, double taxation, double deduction or inequitable avoidance of the tax", Gill v. Commissioner, 5 Cir., 1962, 306 F.2d 902. Here the change in inventory by the second examining agent—and only this adjustment—was the item of income that caused overpayment by the taxpayer in the year 1948 of $93,680.07 and in the year 1949 in the amount of $15,175.29.

## CONCLUSION

Section 3801 of the 1939 Code and Sections 1311–15 of the 1954 Code are technical, complicated, and necessarily difficult to administer. The interpretation of these sections by the Internal Revenue Service is therefore entitled to great weight. The Service, however, notwithstanding its position in this case, a position that to us is inconsistent with Gooch, approved Gooch and construed its holding broadly. See Rev.Rul. 58–327, 1958 Cum.Bull. Such uncertainty in the administration of the mitigating provisions is an inevitable consequence of the liberal approach of the Court of Claims, in Gooch, Hackney, and Moultrie, and

the strict approach of the Tax Court, in Brennen v. Commissioner, 20 T.C. 495 (1953) and MacDonald v. Commissioner, 17 T.C. 934 (1951). See Comment, Adjustments for Tax Consequences, 72 Harv.L.Rev. 1536 (1959).

In reaching for a correct result it seems to us that the Gooch approach is more consonant with the statutory purpose of the mitigating provisions than the over-literal approach adopted in MacDonald. It is true that Section 3801 represents an exception to a statute of repose, and that an argument for strict construction can be based on certain language of Senate Report No. 1567: the mitigating provisions may be applied "only when the party or parties in whose favor [they apply] shall have justified such modification by *active inconsistency*". S.Rep.No.1567, 75 Cong. 3d Sess., 49 (1938). But the most obvious reason for a statute of limitation—staleness of evidence—is absent in cases such as the instant case. The overriding purpose of Section 3801 is to permit an equitable adjustment by treating an error as if it had never existed. Senate Report No. 1567 makes it clear that "disputes as to the year in which income or deductions belong * * * should *never* result in a double tax or a double deduction of tax, or an inequitable avoidance of tax." (Emphasis added.) S.Rep.No.1567, 75 Cong., 3d Sess., 49 (1938). The danger of an over-liberal interpretation of statutory purpose is reduced, at least to some extent, by the necessity for fitting the facts of each case into the concrete, detailed requirements set out in the statute. We hold that on the facts of this case, the taxpayer meets the statutory requirements of Sections 3801 (1939) and 1311-15 (1954) permitting adjustment of an error to avoid double taxation.

Judgment is

Affirmed.