A. J. O'DONNELL, Jr., District Director
of Internal Revenue, Appellant,

v.

W. A. BELCHER et al., Appellees.

No. 25452.

United States Court of Appeals
Fifth Circuit.

July 10, 1969.

Johnnie M. Walters, Asst. Atty. Gen.,
Lee A. Jackson, Karl Schmeidler, Crombie J. D. Garrett, Attys., Dept. of Justice, Washington, D. C., Macon L. Weaver, U. S. Atty., Birmingham, Ala., Mitchell Rogovin, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for appellant; E. Ray Acton, Asst. U. S. Atty., of counsel.

Erle Pettus, Jr., Birmingham, Ala., for appellees; Rives, Peterson, Pettus & Conway, Birmingham, Ala., of counsel.

Before JOHN R. BROWN, Chief Judge, RIVES and McENTEE,* Circuit Judges.

JOHN R. BROWN, Chief Judge:

In this appeal by the Government from the decision awarding to Taxpayers a refund of income taxes for the year 1954, we face the maze of the mitigation provisions of the Code. The precise question presented is whether the mitigation provisions of the 1954 Internal Revenue Code, 26 U.S.C.A. §§ 1311–1314, require the Commissioner's deficiency notice containing adjustments under these provisions to be served *after*,

* Of the First Circuit, sitting by designation.

and not before, the statutory "determination" that triggers post-limitations adjustments. While we differ slightly with some of the reasoning leading the District Court to an affirmative reply, we affirm its judgment for the Taxpayers.

## I.

The four Taxpayers, members of the same family, sought recovery of income taxes assessed and collected for the year 1954. Although the legal issue boils down to a simple, easily phrased question, in order to understand the sole issue it is painfully necessary to review the long and rather complex history of the circumstances from which the action arises. Doing so sharply reminds us that old tax cases never die, nor unfortunately do they ever fade away. Cf. Seaboard Coast Line R.R. v. Gulf Oil Corp., 5 Cir., 1969, 409 F.2d 879. It all started in 1950. Now two decades, five Presidents, and two wars later, it percolates to us for the second time. For the factual summary that follows we borrow freely and almost verbatim from the District Court's excellent opinion, Belcher v. O'Donnell, N.D.Ala., 1967, 270 F.Supp. 835, 43 T.C. 927.

In July 1950, the Belcher Land & Timber Company, a partnership,[1] sold a tract of land known as the Allendale Tract to Atlanta Highway Estates. The sale was made on the installment basis, and the unpaid purchase price was represented by a promissory note secured by a mortgage. Atlanta defaulted in 1953, and the partnership foreclosed the mortgage. The partnership bid in the property at the foreclosure sale and received a foreclosure deed dated February 14, 1953. The amount of the bid was less than the balance due on the installment obligation. Subsequently, in July 1954, Atlanta transferred to the partnership its statutory right under Alabama law to redeem the property pursuant to an agreement that its obligation to the partnership would be satisfied at less than face value. Notwithstanding this, the partnership realized capital gain on the disposition of the obligation, and at issue here is the tax on the distributive shares of that gain.[2]

None of the Taxpayers included in his income tax return for 1953 and 1954 any part of his distributive share of this gain. The Internal Revenue Service issued timely statutory notices of deficiency to each Taxpayer on June 24, 1959, contending for the first time that the partnership realized taxable income in 1953 upon its reacquisition of the Allendale tract by a foreclosure sale in that year, and that distributive shares of the partnership gain were includable in the gross income of each Taxpayer for that year. All of the Taxpayers filed petitions in the Tax Court contesting the deficiency notice for 1953. The proceedings in the Tax Court were consolidated and a decision was rendered under the caption of Belcher v. Commissioner, decided January 8, 1965 (P–H Memo T.C., ¶ 65,001).

---

1. The members of the partnership and their respective interests were as follows:

|  | Percent | |
| --- | --- | --- |
| William Albert Belcher | 34 | |
| Nell Vandergrift Belcher | 34 | |
| William A. Belcher, Sr. Trust, Nell Vandergrift Belcher as Trustee for: | | |
| Mary Earnestine Belcher Abernathy | 8 | |
| William Albert Belcher, Jr. | 8 | |
| Van Elam Belcher | 8 | |
| Katherine Anne Belcher | 8 | 32 |
| Total | | 100 |

2. The amount of the gain is not in dispute.

In addition to the Taxpayers in the present proceeding, Mary Belcher Abernathy was a party to the proceeding in the Tax Court for the year 1953. She was one of the beneficiaries of the Belcher Trust, and her interest in the Commissioner's determination that the partnership received gain on the Allendale tract mortgage foreclosure in 1953 was identical except as to amount with that of the other members of the family. She and her husband filed a joint return for 1953 and became joint petitioners in the consolidated Tax Court case.

The notices of deficiency involved in the Tax Court proceeding covered the years 1950 through 1955 for each of the Taxpayers. Each of them paid the deficiencies for the years 1950 and 1951 and filed claims for refund for those years. The Abernathys also paid the deficiencies for the years 1952, 1954 and 1955 and filed claims for refund for the latter years as well. The deficiencies for 1953 were not paid by any of the Taxpayers or the Abernathys, but, as mentioned above, petitions for redetermination were filed in the Tax Court for that year.

Upon denial of the claims for the years 1950, 1951, 1952, 1954 and 1955, suits for refund were instituted in the District Court and were consolidated for trial under the caption of Belcher v. Patterson (N.D.Ala.), decided October 10, 1960, 60–2 U.S.T.C. ¶ 9733.[3]

One of the issues raised in Belcher v. Patterson by the Abernathys related to the cost of sales of parcels in 1955 from the reacquired Allendale tract. They maintained that the foreclosure of the mortgage did not constitute a taxable event, but in the alternative, if it did, the basis of the property should be stepped up to the extent that such gain was recognized. The District Court found that the foreclosure constituted a taxable event but declined to determine the year of its occurrence. 60–2 U.S.T. C. ¶ 9733, at 78040–41.

At the conclusion of the trial but before an opinion was filed, the Government filed a motion for a setoff against the Abernathys based upon information that the Tax Court petitioners in Belcher v. Commissioner were alleging that the Allendale tract mortgage foreclosure did not constitute a taxable event in 1953 but rather in 1954 and 1955.[4] The Government requested the District Court to determine the specific year in which the taxable event occurred.

On appeal this Court held that the District Court's refusal to make a determination of the specific year in which the gain constituted a taxable event was error.[5] Patterson v. Belcher, 5 Cir.,

---

3. In summary, the Commissioner asserted deficiencies for the years 1950 through 1955 but intially sought to tax any gain realized upon the foreclosure proceedings only for the year 1953. All the Taxpayers, including the Abernathys, contested the asserted deficiencies for 1950 and 1951 in refund proceedings in the District Court. All the Taxpayers, including the Abernathys, sought a redetermination of the asserted deficiency for 1953 in the Tax Court. The Abernathys alone contested their asserted deficiencies for 1952, 1954, and 1955, in the District Court refund proceedings.

4. Only the year 1953 was before the Tax Court. The Commissioner had not determined in his deficiency notices that the extinction of the mortgagor's right of redemption constituted a taxable event. The petitioners in the Tax Court proceeding, with the exception of the Abernathys, had accepted the Commissioner's determinations for 1954 and 1955. However, if the Tax Court petitioners were correct in their contention, then the Abernathys would have additional income for 1954 or 1955, which would offset any refunds due them if other issues involving 1954 or 1955 were resolved in their favor. For this reason the Government requested the District Court to determine the proper year in which the gain was realized.

5. Among other things, this Court held that the determination of the specific year in which the taxable event occurred was indispensable to a final disposition of this litigation. The Court also noted that if the taxable event occurred in 1953, the Government would not be entitled to any setoff in that litigation for 1954 or 1955, whereas it would be entitled to a setoff if

1962, 302 F.2d 289, cert. denied, 371 U. S. 921, 83 S.Ct. 289, 9 L.Ed.2d 230. On remand, the District Court in Abernathy v. Patterson, N.D.Ala., 1963, 63–2 U.S. T.C. ¶ 9678, determined that the mortgage foreclosure constituted a taxable event in 1954. The court held that the amount of refund due the Abernathys for 1954 on other issues should be offset by their distributive share of partnership gain for the same year resulting from the extinction of the mortgagor's right of redemption. The judgment of the District Court entered in Abernathy v. Patterson became final on July 2, 1963, when the defendant's appeal was dismissed before it had been docketed in this court.

On January 22, 1964, the Commissioner sent to each of the Taxpayers herein [6] a statutory notice of deficiency determining that a part of the gain realized by the partnership from the Allendale tract mortgage foreclosure should be included in the gross income of each partner for the year 1954. Assessments of the tax deficiencies were made on May 8, 1964, and were paid by the Taxpayers on August 20, 1964.

Subsequent to these assessments, the Tax Court entered its decision in Belcher v. Commissioner on January 8, 1965, for the year 1953, in which, after independently canvassing the findings and conclusions arrived at by the District Court in Abernathy v. Patterson, it agreed that "the mortgage foreclosure resulted in taxable income to the partnership, and hence to all the partners, in the year 1954 and not in the year 1953." Its decision became final on April 8, 1965.

The Taxpayers filed claims for refund on February 25, 1965, asserting that the assessments and collection of taxes for the year 1954 were barred by the statute of limitations. After a period of more than six months had elapsed, and on February 21, 1966, they initiated and filed the refund suits now before us.

In its amended answer filed on May 16, 1966, the Government referred to the judgment of the District Court in Abernathy v. Patterson and to the decision of the Tax Court in Belcher v. Commissioner. In the pretrial order the contentions of the parties were stated as follows:

"In each case it is contended that the assessment of income taxes for the year 1954 was barred by the statute of limitations and, therefore, that such taxes were erroneously assessed and illegally collected.

"Relying upon the provisions of the mitigation sections of the Code, 26 U. S.C.A. § 1311 et seq., defendant insists that the assessment as to each Taxpayer was made within one year after determination by this court of the occurrence of a taxable event in the year 1954 in the case of a related Taxpayer (Abernathy)."

By letter dated October 24, 1966, addressed to the District Court, with a copy to opposing counsel, the Government advised that at the trial it intended to rely upon the decision of the Tax Court in Belcher v. Commissioner as a determination which validated the assessments made herein. While no formal amendment of the pretrial order was requested or entered, at the trial the Government was permitted to rely upon the judgment of the District Court in Abernathy v. Patterson and alternatively upon the Tax Court decision in Belcher v. Commissioner. In its brief filed in the District Court the Government abandoned its reliance upon Abernathy v. Patterson on the ground that the determination made therein was not one of exclusion as required by the 1954 Code to support the new assessment.

The District Court held that the assessments and collections of taxes for

---

the taxable event occurred either in 1954 or 1955. This Court also noted its desire that the tax consequences of this determination should be settled in that litigation and should not require a new suit.

6. No notice of deficiency was sent to the Abernathys since any amount owed by them had been satisfied by the setoff allowed against them for 1954 in the District Court proceeding.

1954, which were concededly barred by the statute of limitations when made, were not validated by subsequent Tax Court determination in Belcher v. Commissioner.

7. § 1311. Correction of error.

(a) General Rule.—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

(b) Conditions necessary for adjustment.—

(1) Maintenance of an inconsistent position.—Except in cases described in paragraphs (3) (B) and (4) of section 1312, an adjustment shall be made under this part only if—

(A) in case the amount of the adjustment would be credited or refunded in the same manner as an overpayment under section 1314, there is adopted in the determination a position maintained by the Secretary or his delegate, or

(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made, and the position maintained by the Secretary or his delegate in the case described in subparagraph (A) or maintained by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

(2) Correction not barred at time of erroneous action.—

(A) Determination described in section 1312(3) (B).—In the case of a determination described in section 1312(3) (B) (relating to certain exclusions from income), adjustment shall be made under this part only if assessment of a deficiency for the taxable year in which the item is includible or against the related taxpayer was not barred, by any law or rule of law, at the time the Secretary or his delegate first maintained, in a notice of deficiency sent pursuant to section 6212 or before the Tax Court of

II.

The mitigation provisions of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 1311,[7] 1312,[8] 1313,[9] and 1314 [10]

the United States, that the item described in section 1312(3) (B) should be included in the gross income of the taxpayer for the taxable year to which the determination relates.

(B) Determination described in section 1312(4).—In the case of a determination described in section 1312(4) (relating to disallowance of certain deductions and credits), adjustment shall be made under this part only if credit or refund of the overpayment attributable to the deduction or credit described in such section which should have been allowed to the taxpayer or related taxpayer was not barred, by any law or rule of law, at the time the taxpayer first maintained before the Secretary or his delegate or before the Tax Court of the United States, in writing, that he was entitled to such deduction or credit for the taxable year to which the determination relates.

(3) Existence of relationship.—In case the amount of the adjustment would be assessed and collected in the same manner as a deficiency (except for cases described in section 1312(3) (B)), the adjustment shall not be made with respect to a related taxpayer, unless he stands in such relationship to the taxpayer at the time the latter first maintains the inconsistent position in a return, claim for refund, or petition (or amended petition) to the Tax Court of the United States for the taxable year with respect to which the determination is made, or if such position is not so maintained, then at the time of the determination.

8. § 1312. Circumstances of adjustment.

The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

(1) Double inclusion of an item of gross income.—The determination requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer.

(2) Double allowance of a deduction or credit.—The determination allows a

deduction or credit which was erroneously allowed to the taxpayer for another taxable year or to a related taxpayer.

(3) Double exclusion of an item of gross income.

(A) Items included in income.—The determination requires the exclusion from gross income of an item included in a return filed by the taxpayer or with respect to which tax was paid and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year, or from the gross income of a related taxpayer; or

(B) Items not included in income.— The determination requires the exclusion from gross income of an item not included in a return filed by the taxpayer and with respect to which the tax was not paid but which is includible in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer.

(4) Double disallowance of a deduction or credit.—The determination disallows a deduction or credit which should have been allowed to, but was not allowed to, the taxpayer for another taxable year, or to a related taxpayer.

\* \* \* \* \*

9. § 1313. Definitions.

(a) Determination.—For purposes of this part, the term "determination" means—

(1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final;

(2) a closing agreement made under section 7121;

(3) a final disposition by the Secretary or his delegate of a claim for a refund. For purposes of this part, a claim for refund shall be deemed finally disposed of by the Secretary or his delegate—

(A) as to items with respect to which the claim was allowed, on the date of allowance of refund or credit or on the date of mailing notice of disallowance (by reason of offsetting items) of the claim for refund, and

(B) as to items with respect to which the claim was disallowed, in whole or in part, or as to items applied by the Secretary or his delegate in reduction of the refund or credit, on expiration of the time for instituting suit with respect thereto (unless suit is instituted before the expiration of such time) ; or

(4) under regulations prescribed by the Secretary or his delegate, an agreement for purposes of this part, signed by the Secretary or his delegate and by any person, relating to the liability of such person (or the person for whom he acts) in respect of a tax under this subtitle for any taxable period.

(b) Taxpayer.—Notwithstanding section 7701(a) (14), the term "taxpayer" means any person subject to a tax under the applicable revenue law.

(c) Related taxpayer.—For purposes of this part, the term "related taxpayer" means a taxpayer who with the taxpayer with respect to whom a determination is made, stood, in the taxable year with respect to which the erroneous inclusion, exclusion, omission, allowance, or disallowance was made, in one of the following relationships:

(1) husband and wife,

(2) grantor and fiduciary,

(3) grantor and beneficiary,

(4) fiduciary and beneficiary, legatee, or heir,

(5) decedent and decedent's estate,

(6) partner, or

(7) member of an affiliated group of corporations (as defined in section 1504).

10. § 1314. Amount and method of adjustment.

\* \* \* \* \*

(b) Method of Adjustment.—The adjustment authorized in section 1311(a) shall be made by assessing and collecting, or refunding or crediting, the amount thereof in the same manner as if it were a deficiency determined by the Secretary or his delegate with respect to the taxpayer as to whom the error was made or an overpayment claimed by such taxpayer, as the case may be, for the taxable year or years with respect to which an amount is ascertained under subsection (a), and as if on the date of the determination one year remained before the expiration of the periods of limitation upon assessment or filing claim for a refund for such taxable year or years. If, as a result of a determination described in section 1313(a) (4), an adjustment has been made by the assessment and collection of a deficiency or the refund or credit of any overpayment, and subsequently such determination is altered or revoked, the amount of the adjustment ascertained under subsection (a) of this section shall be redetermined on the basis of such alteration or revocation and any overpayment or deficiency resulting from such redetermination shall be refunded or credited, or assessed and collected, as the case may be, as an adjustment under this part. In the case of an adjustment resulting from an increase or decrease in a net operat-

(set out in separate footnotes for ease of reference), provide that under specified circumstances, where an error has been made in the inclusion or exclusion of an item of income or in the allowance or disallowance of a deduction or in the tax treatment of a transaction affecting the basis of property, the error may be corrected even though the ordinary period of limitations has run for that year. The basic object of the mitigation provisions is to eliminate a double tax or a double deduction or an inequitable avoidance of tax. These provisions are intended to attribute income or deductions to the proper year and to the proper taxpayer, and to establish the proper basis for depreciable property. See generally 2 J. Mertens, Law of Federal Income Taxation §§ 14.01–14.22 (rev. ed. 1967). It helps in wending through this legalistic labyrinth to focus on the mitigation situation we have here. Like much else in today's juridical jargon it carries a shorthand numerical symbol, see Aetna Cas. & Sur. Co. v. Berry, 5 Cir., 1965, 350 F.2d 49. This is a Section 1312(3) (B) case which the code categorizes as:

"(B) Items not included in income.— The determination requires the exclusion from gross income of an item not included in a return filed by the taxpayer and with respect to which the tax was not paid but which is includible in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer."

The aim of this complex structure and the warning flag to be heeded was well characterized for us by Judge Wisdom in United States v. Rachal, 5 Cir., 1962, 312 F.2d 376, 383:

"The overriding purpose of [these provisions] is to permit an equitable adjustment by treating an error as if it had never existed. Senate Report No. 1567 makes it clear that 'disputes as to the year in which income or deductions belong * * * should

*never* result in a double tax or a double deduction of tax, or an inequitable avoidance of tax.' (Emphasis added.) S.Rep. No. 1567, 75 Cong., 3d Sess., 49 (1938). The danger of an over-liberal interpretation of statutory purpose is reduced, at least to some extent, by the necessity for fitting the facts of each case into the concrete, detailed requirements set out in the statute."

But as this case demonstrates, whether avoidance of tax is "inequitable" is a matter measured by the statute, which covers 7 categories—several of which can benefit the Government only, some which can work only for taxpayers' advantage, and some which apply across the board. See 2 J. Mertens, Federal Income Taxation § 14.04, at 24–25 (rev. ed. 1967).

Section 1311(a) (note 7, *supra*) sets forth the general conditions in which the mitigation provisions shall apply:

General rule.—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law * * * then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

Section 1312 (note 8, *supra*) describes the circumstances under which the adjustment provided in Section 1311 is authorized. As previously noted, the provision pertinent to the present case is paragraph (3) (B). Section 1313(a) * * * * * (note 9, *supra*) defines a determination to include "(1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final."

In the instant case, the Tax Court's decision in Belcher v. Patterson, in 1965

---

ing loss which is carried back to the year of adjustment, interest shall not be collected or paid for any period prior to the

close of the taxable year in which the net operating loss arises.
* * * * *

constitutes a determination under Section 1313(a). That decision also constitutes a determination within the meaning of Section 1312(3) (B). It requires the exclusion of an item from Taxpayers' gross incomes which was not included in returns filed by them for any other year and for which no tax had been paid. It also is clear that the Commissioner's determination, taxing the gain on the transaction in 1953, was erroneous. The Tax Court, with respect to all Taxpayers, as well as the District Court with respect to the Abernathys, held that the Taxpayers realized taxable gain on the transaction, but this gain was not achieved in 1953 but should have been recognized in 1954.

Section 1311(b) contains still other conditions necessary for the adjustment. Subparagraph (1) is not applicable to a Section 1312(3) (B) case. Subparagraph (2) (A) of Section 1311(b), however, applies to the situation of a double exclusion from income, and provides:

"(A) Determination described in section 1312(3) (B).—In the case of a determination described in section 1312(3) (B) (relating to certain exclusions from income), adjustment shall be made under this part only if assessment of a deficiency for the taxable year in which the item is includible or against the related taxpayer was not barred, by any law or rule of law, at the time the Secretary or his delegate first maintained, in a notice of deficiency sent pursuant to section 6212 or before the Tax Court of the United States, that the item described in section 1312(3) (B) should be included in the gross income of the taxpayer for the taxable year to which the determination relates."

Here again our case fits the statute, for at the time the Commissioner first maintained in a notice of deficiency that the gain was includible in the Taxpayers' incomes for 1953, the statute of limitations had not run for 1954.

Finally, Section 1314 (note 10, *supra*) sets forth the procedure by which the adjustments are to be determined. In particular, subsection (a) describes how the amount of adjustment required by the mitigating provisions should be computed, and subsection (b) sets forth the manner in which these adjustments are to be implemented.

As a structure mitigating the harshness of the statute of limitations for assessments or refunds of taxes, it has its own built-in, very short limitation period of one year. In relevant part Section 1314(b) provides that where the adjustments result in deficiencies, the deficiencies shall be assessed in the regular manner "as if on the date of the determination one year remained before the exipiration of the periods of limitation upon assessment." See note 10, *supra*.

This brings us to the basic question presented to this Court: What is the effect to be given to the language of Section 1314(b)? Before we examine this, a time table brings us out of lunar orbit:

| | |
|---|---|
| Jan. 31, 1963: | District Court determined taxable 1954 |
| July 2, 1963: | District Court judgment final (on dismissal of Government's appeal) |
| Jan. 22, 1964: | Commissioner's deficiency notice based on 1954 |
| May 8, 1964 | |
| Aug. 20, 1964: | Assessments and payment deficiency |
| Jan. 8, 1965: | Tax Court decision holding 1954 and capital gains |
| Febr. 25, 1965: | Taxpayers' claim for refund |
| April 8, 1965: | Tax Court judgment final |
| Febr. 21, 1966: | Taxpayers' suit for refund |

Taxpayers contend that the deficiency notices were not timely, since the notice

issued (Jan. 22, 1964) was prior to the only qualifying determination by the Tax Court (April 8, 1965). The Government, on the other hand, contends that section 1314(b) merely establishes the absolute point in time, namely, one year after the beginning of the revived limitation period, beyond which a notice of deficiency may not be issued. It argues—because it has to and fails if it does not succeed—that an ineffectual deficiency notice, i.e., a premature one, may under certain circumstances be validated by a subsequent determination and that the statute of limitations is suspended if the notice fairly reveals the Government's contention and is issued at any time prior to the expiration of the one-year period.

This Court has previously commented upon the daedal structure of the mitigation provisions.[11] Further, it is too doctrinaire simply to say that these sections are to be applied evenhandedly to Government and taxpayer alike. The categories are not so structured, and, more important, there is quite a difference between allowing a deficiency assessment by the Government long after the usual statute of limitations has run

and allowing a refund request (claim) by a citizen taxpayer. As the previous discussion had shown, the fundamental design of the statute is that the occurrence of a statutory determination, under specified circumstances, gives either the Government or the taxpayer the right to seek relief under these provisions. When this happens, one effect is that the statute of limitations is extended for one year following the determination, and thus a deficiency notice may be sent or claim for refund filed within that time. The Government takes the position that since some cases allow a premature but revealing claim for refund to suffice, the same must be true for its awesome deficiency notice, which sets in train formidable coercive sanctions.[12]

We cannot accept this argument for several reasons. First, the whole scheme of mitigation rests on a "determination". Consequently, the chronological sequence obviously contemplates a determination followed by the deficiency notice. See notes 7–10 supra. This is also spelled out in the applicable Treasury Regulation.[13]

---

11. See United States v. Rachal, 5 Cir., 1962, 312 F.2d 376, 382–383.

12. An adjustment treated as a deficiency is to be assessed and collected under the law and regulations applicable to the assessment and collection of deficiencies, subject to certain limitations. These limitations are contained in § 1314(c), which provides that the amount of the adjustments shall not be dismissed by an offset based upon any other items. This prevents the opening of all items of the returns for the years of adjustment. See generally 2 J. Mertens, Federal Income Taxation § 14.19–14.20 (rev. ed. 1967).

13. It provides in part:
    (b) For the purpose of the adjustment authorized by section 1311, the period of limitations upon the making of an assessment or upon refund or credit, as the case may be, for the taxable year of an adjustment shall be considered as if, on the date of the determination, one year remained before the expiration of such period. *The Commissioner thus*

has one year from the date of the determination within which to mail a notice of deficiency in respect to the amount of the adjustment where such adjustment is treated as if it were a deficiency. The issuance of such notice of deficiency, in accordance with the law and regulations applicable to the assessment of deficiencies will suspend the running of the 1-year period of limitations provided in section 1314(b). In accordance with the applicable law and regulations governing the collection of deficiencies, the period of limitation for collection of the amount of the adjustment will commence to run from the date of assessment of such amount. (See section 6502 and corresponding provisions of prior revenue laws.) *Similarly, the taxpayer has a period of one year from the date of the determination within which to file a claim for refund in respect of the amount of the adjustment where such adjustment is treated as if it were an overpayment.* Where the amount of the adjustment is treated as if it were a deficiency and the taxpayer

■ Both the structure of the Act and an exploration of consequences from a contrary reading support the conclusion that the language means that the notice of deficiency is to follow, rather than precede, the final determination.[14]

For example, contemplate what would have happened had (1) Taxpayers here chosen to contest the 1964 deficiency notices in a separate Tax Court proceeding,[15] on the ground that the assessments and collection for 1954 were barred by limitations, and (2) the Tax Court had made a final decision in that hypothetical proceeding before rendering its decision (April 8, 1965) in *Belcher*. In that event, Taxpayers' contention would have to have been sustained. This is true because prior to the Tax Court's April 8, 1965, determination there would have been no statutory determination upon which the Government could have relied to overcome the already effective statute of limitations and to invoke the mitigation provisions. Likewise, the same result would have obtained in a refund suit in the District Court, if that suit had proceeded to judgment before the Tax Court's 1965 determination.

Stated another way, until the qualifying determination in 1965, the Government simply was not authorized to open the year 1954. Regardless of the course adopted by Taxpayers to challenge the 1964 deficiency notice, such a trial court would have been compelled to hold the notice invalid because not yet authorized by the mitigation provisions. We do not feel that this result should change because of the adventitious circumstance that Taxpayers' challenge did not reach trial until after the qualifying determination in 1965.

Seeking sauce for taxpayer and Government alike, the Government urges that, as with a premature refund claim, the premature deficiency notices here adequately informed Taxpayers of its intentions. In support of this approach the Government first stresses the cases of Moultrie Cotton Mills v. United States, 1957, 151 F.Supp. 482, 138 Ct. Cl. 208, and Esterbrook Pen Co. v. United States, D.N.J., 1960, 60–2 U.S. T.C. ¶ 9609. These cases involved refund claims (rather than assessments) filed prior to a qualifying determination. In each case the Court held that when there was a claim for refund pending at the time of the determination and the claim adequately apprised the Government of the grounds relied upon for an adjustment, the taxpayer was not required to file a second claim after the date of the determination. The Government urges that if there is no useful purpose in requiring a taxpayer to file a second claim for refund when his first claim has sufficiently informed the Commissioner of the nature and basis of his claim, it should be equally fruitless

---

chooses to pay such deficiency and contest it by way of a claim for refund, the period of limitation upon filing a claim for refund will commence to run from the date of such payment. See section 6511 and corresponding provisions of prior revenue laws. (Emphasis added). Treas.Reg. § 1.13114(b)–1(b), 26 C.F.R. § 1.1314(b)–1(b).

14. See also Benenson v. United States, 2 Cir., 1967, 385 F.2d 26, where the Court stated: "The framework of the mitigation provisions clearly envisions a two-step procedure: First, a 'determination,' followed by, second, the * * * assessment of deficiency * * *." 385 F.2d at 31.

15. The Taxpayers have argued here, and the Court below agreed, that if the assess-

ment and collection in 1964 of the taxes resulting from adjustments for 1954, which concededly were barred by the statute of limitations when made (notice Jan. 22, 1964; assessment May 8, 1964), were validated by the subsequent Tax Court determinations in 1965, this would deprive Taxpayers of their right to contest the deficiencies for 1954 before the Tax Court. Apparently their underlying reasoning is that a challenge in the Tax Court would be limited to the "substantive" issue of the calculation of the deficiencies. Without weighing this superfluous argument, we would just say that it seems to us that the efficacy of the premature "procedural" deficiency notice might also be challenged in the Tax Court.

to require the Government to issue a second deficiency notice to the same taxpayers if the first notice sufficiently apprised them of the basis of the deficiency and made the same adjustment that would have been included in a second notice.

In our view there is a significant distinction between the *Moultrie* and *Esterbrook* cases and the one before us now. In those decisions the adjustment authorized by the qualifying determination would necessarily be the same as that requested in the refund claim filed before the determination.[16] But as we point out shortly, in this case the adjustment authorized by the qualifying determination could have deviated substantially from the adjustment made in the premature deficiency notices.

Pursuing this same tack, the Government points out that the 1964 deficiency notices fully apprised Taxpayers of the Government's position, *i. e.*, (1) that it relied on the mitigation provisions, and (2) that the item in question was taxable in the year 1954 at capital gain rates. The argument continues that "the Commission was able equally, either in January, 1964, or after April 1965, to calculate the proper adjustments under § 1314(a)." The Government can make this assertion, however, only because of the fortuitous circumstance that the Tax Court reached the same decision in *Belcher* that the District Court had reached in *Abernathy* regarding the issues of rate of tax and year of taxability.[17] But it would have been quite another matter had the Tax Court in *Belcher* decided that the income item in question should have been taxed at

*ordinary* rather than *capital gain* rates. It came as no shock to us on oral argument when the Government counsel acknowledged that in this situation it would not have felt itself bound by its earlier 1964 deficiency notices, and that it would have felt free to issue deficiency notices within one year after such determination seeking to have the income taxed in the year 1954 at ordinary income rates. The Government would, therefore, have been treating its earlier deficiency notices as a nullity. Looking at the plain words of the statute, a Court would be hard pressed to deny that right to the Government. The Government's plea is not for evenhandedness. Its reading would bring about, not ameliorate, hardship.

There is another reason why we should resist the Government's importunities to "read out and read in" what it needs in a statute which is so very, very complex as it tries to deal differently with different problems. There is simply no need for it, either here or generally in tax administration. The Government simply went to sleep. More than that, it slept through several alarms sounded gratuitously by Taxpayers.

Taxpayers filed their claim for refund on February 25, 1965, one and one-half months before the Tax Court judgment in *Belcher* became final. The refund claim asserted precisely that limitations had run prior to the assessment under the 1964 notices and challenged the Government's right to rely on the mitigation provisions to authorize these assessments.[18] The Government was put

---

16. In *Esterbrook*, it was the disposition of the refund claim previously filed which constituted the "determination" that brought the mitigation provisions into play. After the determination (refund action) took place, the only thing that remained to be done was the formality of refiling the identical refund claim. In the instant case, the qualifying determination in the Tax Court *Belcher* case was based on deficiency notices issued in 1958 and did not involve the 1964 notices contested here.

17. The Tax Court, after independently canvassing the facts, found, and the conclusions arrived at by the District Court in *Abernathy* agreed, that "the mortgage foreclosure resulted in taxable income * * * in the year 1954 and not in the year 1953."

18. The refund claim stated:

"(8) Taxpayers state that Section 1311 of the Internal Revenue Code does not authorize the correction of any error or any alleged error in order to permit

on notice by the refund claim that the District Court's decision in *Abernathy* in 1963 would be the only possible determination qualifying under Section 1313, since the Tax Court's decision in *Belcher* did not become final until more than one month after the refund claim was filed. In addition, the claim noted that the *Abernathy* decision did not meet the requirements of Section 1312(3) (B)—the provision upon which the Government ultimately relied both below and here.

■ Therefore, the Government had notice in February 1965 that it had issued the deficiency notices under a mitigating "determination" that did not meet the statutory requirements. Accordingly, there remained over one year —from February 1965 to April 8, 1966 (when the one year extension on limitations expired)—for the Government to recognize its error, see all bright and shiny the existence of a qualifying determination in *Belcher,* and issue a second notice pursuant to that determination.

But the Government did nothing, not even in the face of specific warnings from Taxpayers first in February 1965 and renewed later in their argument in the refund suit filed in February 1966. Congress passed an Act which would work well and easily. But the statute had to be heeded. For this Court in the guise of interpretation to extricate the Government from its default would be to let ourselves fall victim to "the danger of an over-liberal interpretation of statutory purposes" that Judge Wisdom has warned us of. United States v. Rachal, *supra,* 312 F.2d at 383.

Here, the Government clearly had notice of its failure to comply with the

statutory provisions at a time when it was still possible to do so. Having failed to avail itself of the abundant chance to rectify its mistake, the Government must now pay the piper.

Affirmed.

the assessment of any additional Federal Income Tax against taxpayers for the year 1954 and taxpayers state that Section 1311 is not applicable on one or more of the following grounds, separately and severally, to-wit:

(a) There has been no 'determination' as defined in Section 1313 of the 1954 Internal Revenue Code;

\*　　　\*　　　\*　　　\*　　　\*

(g) There has been no determination with respect to a taxpayer or a related party or the Commissioner or government as defined in Section 1313, et seq. which:

\*　　　\*　　　\*　　　\*　　　\*

4. Requires exclusion from gross income of an item which is includible for another year or is income to a related taxpayer or taxpayers \* \* \*."